UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHRISTOPHER HADSELL,<br><br>   Plaintiff,<br><br>   v.<br><br>UNITED STATES OF AMERICA, THE DEPARTMENT OF TREASURY BY ITS AGENCY, THE INTERNAL REVENUE SERVICE,<br><br>   Defendant. | Case No. 20-cv-03512-VKD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS COMPLAINT**<br><br>Re: Dkt. No. 13 |

Pro se[1] plaintiff Christopher Hadsell filed this action against the United States, asserting claims under 26 U.S.C. § 7433 and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80. In essence, Mr. Hadsell contends that he made valid credit elections to have overpayments of taxes applied to the following year's tax liability, but the Internal Revenue Service ("IRS") improperly treated his credit elections as refunds subject to offset. The United States now moves to dismiss, arguing that the Court does not have subject matter jurisdiction over Mr. Hadsell's claims. Upon consideration of the moving and responding papers, as well as the arguments presented at the motion hearing, the Court grants the motion in part and denies it in part.[2]

---

[1] Mr. Hadsell advises that he passed the California bar exam but is not yet a member of the California bar or of the bar of this Court. Dkt. No. 8 at ECF 7.

[2] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 5, 15.

## I. BACKGROUND

According to the complaint, Mr. Hadsell timely filed an income tax return for the tax year 2016 and reported an overpayment of $9,547, as to which he made a credit election and directed the IRS to apply it to his tax liability for the 2017 tax year. *See* Dkt. No. 1 at 15, 19.[3] The complaint further alleges that it was not until July 9, 2018 that the IRS notified him that it was refunding his overpayment for the year 2016, rather than applying it to his 2017 tax liabilities. *Id*. at 22, 40. Mr. Hadsell says that this notice came well over a year after he filed his 2016 tax return and months after he says his $9,547 credit election should have been deemed paid against his 2017 tax liabilities. *Id*. at 15.

Further, the complaint indicates that by the time the IRS notified Mr. Hadsell that it was refunding, and not crediting, his $9,547 overpayment, he had already filed his 2017 tax return. *See id*. at 120. In preparing his 2017 tax return, the complaint alleges that Mr. Hadsell included the $9,547 credit against his 2017 tax liabilities. *Id*. at 15. Additionally, Mr. Hadsell says that he uses a tax preparation software program to calculate his taxes and was surprised to find that the program indicated he owed $2,448 under the Patient Protection and Affordable Care Act ("ACA"). *Id*. at 23. Although he believed no such tax was owed for the year 2017, Mr. Hadsell claims that he nonetheless erred on the side of caution in favor of overpaying, rather than underpaying, his taxes and therefore paid the $2,448 healthcare tax. *Id*. Even so, Mr. Hadsell says that he subsequently received a July 16, 2018 notice from the IRS advising that he owed $2,448 in healthcare tax for that same year. *Id*. at 23, 47. The complaint further alleges that on August 6, 2018, Mr. Hadsell responded to the IRS by disputing that he owed $2,448; but, to stop further collection efforts, Mr. Hadsell enclosed his payment of the $2,448, with a request that the IRS correct the issue and apply the enclosed payment toward his tax liabilities for the year 2018. *Id*. at 23, 51-52. Records appended to the complaint indicate that the IRS subsequently determined that Mr. Hadsell had overpaid $2,448, but diverted a portion of that sum to "an amount owed for 2017" and refunded the remainder to Mr. Hadsell. *Id*. at 24, 95, 97.

---

[3] All pin citations to documents filed in this docket are to the ECF page number that appears in the header of the cited document.

2

1    Mr. Hadsell contends that any deficiencies in his 2017 and 2018 tax returns are solely the
2    result of the IRS's failure to honor his 2016 credit election and his August 6, 2018 letter
3    conditioning his $2,448 healthcare tax payment on application of that sum to his 2018 tax
4    liabilities. *Id*. at 24.  The complaint asserts a claim under 26 U.S.C. § 7433, which provides for
5    civil damages for certain unauthorized tax collection actions, as well as a claim for violation of the
6    FTCA.  Mr. Hadsell seeks $13,253.13 in damages,[4] plus interest, fees and costs.

The United States moves to dismiss the complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.  It contends that the IRS properly exercised its authority to apply any overpayments to Mr. Hadsell's other outstanding debts and that this Court has no jurisdiction to review those decisions.  Additionally, the United States argues that the FTCA expressly exempts Mr. Hadsell's claim and that he failed, in any event, to administratively exhaust his claim.  For the reasons discussed below, the Court denies the motion with respect to Mr. Hadsell's § 7433 claim without prejudice, but grants the motion to dismiss Mr. Hadsell's FTCA claim.

## II.   LEGAL STANDARD

"Federal courts are courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute[.]"  *Kokkonen v. Guardian Life Ins. Co. of Am*., 511 U.S. 375, 377 (1994).  "It is well settled that the United States is a sovereign, and, as such, is immune from suit unless it has expressly waived such immunity and consented to be sued."  *Dunn & Black, P.S. v. United States*, 492 F.3d 1084, 1087-88 (9th Cir. 2007).  "A waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'"  *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. King*, 395 U.S. 1, 4 (1969)); *see also Dunn & Black, P.S.*, 492 F.3d at 1088 (same).  Where the United States has not consented to suit, the action must be dismissed because such consent is necessary for jurisdiction.  *Dunn & Black, P.S.*, 492 F.3d at

---

[4] The United States contends that Mr. Hadsell does not contest the application of a portion of his 2016 tax year overpayment to his shared responsibility owed under the ACA, inasmuch as that sum does not appear to be included in his claimed damages. Dkt. No. 33 at 2 n.1.  Mr. Hadsell states that the present motion to dismiss was the first time he was made aware of any such assessment. Dkt. No. 17 at 5-6, 7 n.13.  In any event, he notes that his complaint encompasses the entire $9,547 overpayment arising in 2016 and which he says should have been applied to his 2017 tax liabilities.

3

1088. "To confer subject matter jurisdiction in an action against a sovereign, in addition to a waiver of sovereign immunity, there must be statutory authority vesting a district court with subject matter jurisdiction." *Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1016 (9th Cir. 2007).

A Rule 12(b)(1) motion to dismiss challenges a federal court's jurisdiction over the subject matter of a plaintiff's complaint. A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings (a "facial attack") or by presenting extrinsic evidence (a "factual attack"). *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

In the present matter, although the United States relies on declarations and other evidence outside the pleadings, it does not seriously challenge Mr. Hadsell's factual allegations, albeit the United States maintains that those allegations are insufficient, on their face, to invoke jurisdiction. *See* Dkt. No. 13 at 5. Accordingly, the Court construes the United States's motion as a facial attack on jurisdiction.[5] As such, the record is limited to the complaint and appended exhibits, as well as materials that may be judicially noticed.[6] *See Hyatt v. Yee*, 871 F.3d 1067, 1071 n.15 (9th Cir. 2017). Additionally, the Court must accept well-pled allegations of the FAC as true, draw all reasonable inferences in Mr. Hadsell's favor, and determine whether they are sufficient to invoke jurisdiction. *See id.* As the party asserting federal subject matter jurisdiction, Mr. Hadsell bears the burden of establishing its existence. *Kokkonen*, 511 U.S. at 377.

---

[5] As discussed at the motion hearing, the United States concedes certain deficiencies in the evidence submitted in support of its motion and agrees that the Court properly may resolve the present motion based solely on Mr. Hadsell's complaint and the exhibits appended to his pleading. The Court has not considered the evidence submitted by the United States and deems moot Mr. Hadsell's objections to that evidence.

[6] Neither side has submitted matters for judicial notice.

4

### III. DISCUSSION

#### A. 26 U.S.C. § 7433

Mr. Hadsell's first claim for relief is brought pursuant to 26 U.S.C. § 7433, which provides for a civil action for damages "[i]f, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence, disregards any provision of [the Internal Revenue Code ("Code")], or any regulation promulgated under [the Code]." 26 U.S.C. § 7433(a). Additionally, 28 U.S.C. § 1346 provides that "district courts shall have original jurisdiction" over civil actions "against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws." 28 U.S.C. § 1346(a)(1). As discussed above, Mr. Hadsell claims that the IRS improperly failed to honor his 2016 credit election and his August 6, 2018 letter conditioning his $2,448 healthcare tax payment on application of that sum to his 2018 tax liabilities.

The United States contends that insofar as Mr. Hadsell challenges the IRS's decision to offset portions of his tax overpayments to other outstanding debts, this Court's jurisdiction to review such decisions is foreclosed by 26 U.S.C. § 6402. Section 6402 provides that in the case of any tax overpayment, the IRS "within the applicable period of limitations may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall," subject to certain offsets, "refund any balance to such person." 26 U.S.C. § 6402(a); 26 C.F.R. §§ 301.6402-1. "That is, the IRS 'shall' refund any overpayment not otherwise credited, but the IRS 'may credit' an overpayment to another liability." *Weber v. Comm'r of Internal Revenue*, 138 T.C. 348, 356 (T.C. 2012). Additionally, the IRS may "prescribe regulations providing for the crediting against the estimated income tax for any taxable year of the amount determined by the taxpayer or the [IRS] to be an overpayment of the income tax for a preceding taxable year." 26 U.S.C. § 6402(b). A taxpayer who reports an overpayment of tax on his return may request that the sum be refunded or, alternatively, may make a credit election to have the overpayment applied to his

5

estimated income tax for the following tax year. 26 U.S.C. § 6402; 26 C.F.R. § 301.6402-2, 3(a)(5). If the taxpayer elects to have all or part of the overpayment applied to his estimated tax for the following year, "such indication shall constitute an election to so apply such overpayment, and no interest shall be allowed on such portion of the overpayment credited and such amount shall be applied as a payment on account of the estimated income tax for such year or the installments thereof." 26 C.F.R. § 301.6402-3(a)(5).

As noted, the IRS's authority to credit or refund any overpayments of tax are subject to offset for certain types of tax and non-tax obligations. Relevant to the discussion here, the United States points out that records appended to the complaint indicate that in May 2018 at least a portion of Mr. Hadsell's overpayment for the 2016 tax year, i.e., $7,152.52, was sent to the Department of Child Support Services in Martinez, California to pay past-due child support obligations, and that a similar transfer was made in April 2019 with respect to his 2017 tax return, resulting in an offset of $73.86. *See* Dkt. No. 1 at 37-38, 139. The United States argues that such offsets are required by § 6402(c)[7] and that pursuant to § 6402(g) "[n]o court of the United States shall have jurisdiction to hear any action, whether legal or equitable, brought to restrain or review" such reductions to a taxpayer's overpayment.[8]

---

[7] Section 6402(c) provides:

> **(c) Offset of past-due support against overpayments**.—The amount of any overpayment to be refunded to the person making the overpayment shall be reduced by the amount of any past-due support (as defined in section 464(c) of the Social Security Act) owed by that person of which the Secretary has been notified by a State in accordance with section 464 of such Act. The Secretary shall remit the amount by which the overpayment is so reduced to the State collecting such support and notify the person making the overpayment that so much of the overpayment as was necessary to satisfy his obligation for past-due support has been paid to the State. The Secretary shall apply a reduction under this subsection first to an amount certified by the State as past due support under section 464 of the Social Security Act before any other reductions allowed by law. This subsection shall be applied to an overpayment prior to its being credited to a person's future liability for an internal revenue tax.

[8] The United States also suggests that other offsets may have been made pursuant to § 6402(d) for the collection of debts owed to federal agencies. Dkt. No. 13 at 2, 6. However, it was unable to confirm whether any such offsets were made because at the time the present motion was briefed, counsel at the Department of Justice had not received the complete file concerning this matter.

6

1    As a general matter, the Court agrees that § 6402(g), on its face, precludes this Court's
2    jurisdiction to review offsets made pursuant to the statute, including for past-due child support
3    payments under § 6402(c). Additionally, the United States argues, persuasively, that insofar as
4    child support payments are non-tax debts, they do not give rise to a claim under § 7433 for
5    damages "in connection with any collection of Federal tax[.]" *See Ivy v. Comm'r of the Internal*
6    *Revenue Serv.*, 197 F. Supp. 3d 139, 142 (D.D.C. 2016), *aff'd* 877 F.3d 1048 (D.C. Cir. 2017)
7    (stating that "§ 7433 pertains to tax collection, and there is no allegation in the complaint that the
8    IRS was collecting unpaid taxes from the plaintiff" when it made an offset for outstanding student
9    loan debt). To the extent Mr. Hadsell might dispute the offsets for past-due child support, the
10   statute further indicates that his remedy is to raise a challenge with the relevant agency, not the
11   IRS. *See* 26 U.S.C. § 6402(g) ("This subsection does not preclude any legal, equitable, or
12   administrative action against the Federal agency or State to which the amount of such reduction
13   was paid or any such action against the Commissioner of Social Security which is otherwise
14   available with respect to recoveries of overpayments of benefits under section 204 of the Social
15   Security Act."); *Ivy*, 197 F. Supp. 3d at 143 (stating that for offsets made to pay outstanding
16   student loan debts, the "plaintiff's remedy was to challenge the Department of Education's action,
17   not that of the IRS.").
18   This does not, however, fully resolve the present motion because the United States's
19   arguments concerning non-tax debts do not address the alleged erroneous assessment of the
20   healthcare tax. Moreover, Mr. Hadsell contends that general principles concerning the § 6402
21   statutory framework and its implementing regulations are beside the point. He does not dispute
22   that the IRS has the discretion to accept a taxpayer's credit election and is not obliged to do so.
23   Nor does he appear to dispute that § 6402 authorizes the IRS to divert some or all of a tax
24   overpayment to offset certain taxpayer obligations. Rather, the gravamen of his claim appears to
25   be based on timing—namely, that he filed his 2017 tax return in anticipation that his 2016
26   overpayment would be credited against his 2017 tax liabilities, and the IRS's apparent decision to

---

The Court therefore does not address whether any of the offset(s) at issue were made pursuant to § 6402(d).

7

apply his 2016 overpayment to other obligations came too late, particularly with respect to any offsets of his overpayment for the year 2016 that apparently were not made until May 2018. Here, Mr. Hadsell's 2016 credit election appears to be the primary focus, inasmuch as he seems to contend that the IRS's deficiency notices are erroneous because they stem from its failure to properly honor the 2016 credit election, compounded by the later error in the assessment of the healthcare tax. Mr. Hadsell claims that, to his knowledge, the IRS accepted his credit election and having done so, it was obliged to apply his overpayments to the following year's tax liabilities as he directed. *See generally Martin Marietta Corp. v. United States*, 572 F.2d 839, 842 (Fed. Cl. 1978) ("If a taxpayer, such as plaintiff, elects to credit an overpayment to its succeeding taxable year's estimated tax liability, that election is irrevocable and binding upon both the taxpayer and the Internal Revenue Service.").

On this point, the Court finds the parties' briefing and argument insufficient to permit a proper assessment of the jurisdictional issues raised by the United States's motion. Neither side has pointed to any authority regarding the circumstances under which, as Mr. Hadsell contends, the IRS may be deemed to have irrevocably accepted a credit election, or explained how such acceptance might impact this Court's jurisdiction over Mr. Hadsell's § 7433 claim. Mr. Hadsell cites some authority suggesting that, absent any notices to the contrary, there may have been point(s) in time when he reasonably may have relied on the assumption that the IRS accepted his 2016 credit election. Here, Mr. Hadsell claims that he did not receive any interest payments on his 2016 overpayment that he says he might otherwise have expected under 26 U.S.C. § 6611 if the IRS were not going to credit his overpayment to the next year's tax liabilities. Additionally, 26 U.S.C. § 6513 indicates that Mr. Hadsell's 2016 credit election was deemed transferred to his 2017 tax account in April 2018, i.e., before Mr. Hadsell says he received any notice from the IRS that those sums had not actually been applied to his 2017 tax liability. *See* 26 U.S.C. § 6513(b)(2), (d). For its part, the United States conceded at oral argument that it is aware of no additional guidance on this issue, apart from what is cited in its motion papers. But *Ivy* (cited above), which is the United States's sole cited authority on this issue, is not particularly helpful as it does not concern a credit election.

8

The lack of helpful authority regarding the timing issue Mr. Hadsell raises is particularly concerning, as neither party addresses language in § 6402(a) and 26 C.F.R. § 301.6402-3(a)(6) stating that the IRS may credit overpayments to other obligations "within the applicable period of limitations." And in at least one decision examining § 6402 and related regulations with respect to a taxpayer's credit election, the Tax Court has stated that "[26 C.F.R.] section 301.6402-3(a)(6) makes it clear that the taxpayer's election to apply an overpayment to the succeeding year is *not* binding on the IRS[.]" *Weber*, 138 T.C. at 357 (emphasis added). "Thus, a taxpayer may request a credit elect overpayment, but the IRS has discretion whether to allow it or instead to credit the overpayment to another liability owed by the taxpayer or to refund it." *Id*. In *Weber*, the taxpayer complained that the IRS erred by failing to apply against his 2008 income tax liability his claimed credit election from 2007 (which in turn derived from a claimed credit election he made in 2006), or alternatively to credit to his 2008 liability an alleged overpayment of certain trust fund taxes. The Tax Court concluded that the IRS did not err in applying the taxpayer's credit election to an outstanding penalty, rather than to the following year's tax liabilities as he requested. *Id*. at 361-62. However, in *Weber*, the tax penalty in question was assessed before the taxpayer filed his 2006 tax return, and the IRS advised the taxpayer that his 2006 overpayment had been applied to that penalty well before he filed his 2007 tax return. *See id*. at 350-51. In the present matter, Mr. Hadsell seems to claim that the IRS did not advise him that his 2016 overpayment would be applied to other obligations until after he filed his 2017 tax return.

The parties have not adequately addressed how § 6402 and its implementing regulations apply to the particular circumstances alleged in the complaint. Moreover, as noted above, the present motion was briefed without the benefit of the complete IRS record concerning this matter. Accordingly, the Court defers further consideration of its jurisdiction over Mr. Hadsell's § 7433 claim and denies the United States's motion without prejudice to renew the motion upon a more fully developed record.

### B.     FTCA

The FTCA waives sovereign immunity for certain damages claims arising from "the negligent or wrongful act or omission" of any federal employee "while acting within the scope of

9

his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). However, that waiver of sovereign immunity is subject to exceptions set out in 28 U.S.C. § 2680. The United States argues that Mr. Hadsell's claim falls within two such exceptions—one under § 2680(c), which exempts "[a]ny claim arising in respect of the assessment or collection of any tax," and the other under § 2680(h), which exempts "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights[.]" Additionally, the United States contends that Mr. Hadsell did not administratively exhaust any claims, which is a jurisdictional requirement under the FTCA. *See* 28 U.S.C. § 2675(a); *Brady v. United States*, 211 F.3d 499, 502 (9th Cir. 2000).

Turning first to the FTCA's exemption under § 2680(h), Mr. Hadsell's FTCA claim is based on negligence, conversion and breach of contract under California law. Dkt. No. 1 at 29-34. The United States's arguments concerning this exemption are cursory and do not clearly explain how such claims fall within the categories of exempted claims listed in § 2680(h). Accordingly, the Court finds that § 2680(h) does not apply.

More persuasive is the United States's argument that Mr. Hadsell's claim falls under § 2680(c), which as noted, exempts "[a]ny claim arising in respect of the assessment or collection of any tax[.]" Mr. Hadsell contends that his claim does not fall within this provision because he seeks funds that do not involve the assessment or collection of any taxes. Dkt. No. 17 at 12. This assertion appears to contradict allegations that for purposes of his § 7433 claim, this matter indeed involves the collection of taxes. *See* Dkt. No. 1 at 18. Nevertheless, the Court focuses here on Mr. Hadsell's argument that while this action "involves the use of the assessment-and-collection-of-taxes machinery," his FTCA claim concerns the IRS's alleged use of that machinery to violate the law, i.e., by "taking funds that ***must remain within*** that process, ***out*** of that process to violate the law." Dkt. No. 17 at 12.

While § 2680(c) is not limitless and "does not confer absolute immunity on the IRS," the provision nonetheless has been "'broadly construed' . . . to encompass actions taken during the

10

scope of the IRS's tax assessment and collection efforts." *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1155, 1157 (9th Cir. 2017). For example, the Ninth Circuit has held that "2680(c) barred not just claims based on literal collection activity, but also a taxpayer's claim that IRS agents wrongfully told his creditors of his purported tax liability during an audit of his business." *Id*. at 1157 (citing *Morris v. United States*, 521 F.2d 872, 874-75 (9th Cir. 1975)). Even assuming such discussions were "beyond the normal scope of authority and amounted to tortious conduct," the Ninth Circuit found that the discussions were sufficiently related to tax collection efforts such that the plaintiff's claim fell within the scope of § 2680(c). *Morris*, 521 F.2d at 874. In *Snyder*, however, the Ninth Circuit concluded that the IRS was not immune from suit related to an IRS "criminal sting operation" aimed at snaring fraudsters who filed fake tax returns "to claim 'refunds' wholly unconnected to payment of taxes." *Snyder*, 859 F.3d at 1158-59. Such activity was deemed distinct from tax assessment and collection efforts such that § 2680(c) did not apply. *Id*.

Here, the Court concludes that § 2680(c) applies. Mr. Hadsell essentially contends that the funds in question should have been used to pay his future tax liabilities, but were improperly diverted to pay other obligations. Nevertheless, his alleged injury clearly arises out of the operation of the IRS's mechanism for assessing and collecting taxes, i.e., the filing of tax returns and the IRS's treatment of his credit elections. Accordingly, the Court concludes that the United States is immune under § 2680(c) from Mr. Hadsell's FTCA claim and that the claim must be dismissed for lack of subject matter jurisdiction.[9]

## IV.  CONCLUSION

Based on the foregoing, the United States's Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is granted in part and denied in part as follows: The motion is denied without prejudice with respect to Mr. Hadsell's claim under 26 U.S.C. § 7433. The motion is

---

[9] The Court does not reach the United States's argument that the FTCA claim is also barred for failure to administratively exhaust his claim.

granted with respect to Mr. Hadsell's FTCA claim, and that claim is dismissed without leave to amend.

**IT IS SO ORDERED.**

Dated: February 3, 2021

_____
VIRGINIA K. DEMARCHI
United States Magistrate Judge

12