Christopher Hadsell
Plaintiff
9000 Crow Canyon Rd., S-399
Danville, CA 94506
Email: CJHadsellLaw@gmail.com
Tel: (925) 482-6502

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Christopher Hadsell,<br><br>    Plaintiff,<br><br>vs.<br><br>United States of America, the Department of Treasury by its agency, the Internal Revenue Service<br><br>    Defendant. | Case No.:   20-cv-03512-VKD<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO ALTER, AMEND, OR VACATE 2/3/21 ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS COMPLAINT UNDER FRCP 59(e)**<br><br>**Date**:   3/9/21<br>**Time**:   10:00 a.m.<br>**Courtroom 2, 5th Floor**<br>**Judge:**  Hon. Virginia K. DeMarchi |

TO THE COURT, ALL PARTIES, AND ALL ATTORNEYS OF RECORD:

Please take notice that on 3/9/21 at 10:00 a.m., or as soon thereafter as the matter can be heard in the courtroom of Honorable Virginia K DeMarchi, located at Courtroom 2, 5th Flr, 280 South 1st St., San Jose, California, Plaintiff Christopher Hadsell ("**Hadsell**") will and hereby does move the Court, pursuant to Fed. Rules Civ. Proc., rule 59(e) for an order to alter or amend or vacate the Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Complaint filed 2/3/21 (Dkt 22).

Hadsell brings this motion on the ground that the Court committed clear errors resulting in a decision that is manifestly unjust.

This motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the files and records in this matter, any evidence or argument presented at any hearing on this matter, and the attached Proposed Order.

1

Plaintiff's Notice of Motion and Motion to Alter, Amend, or Vacate 2/3/21 Order Granting in Part and    Case No.:
Denying in Part Defendant's Motion to Dismiss Complaint Under FRCP 59(e)                                 20-cv-03512-VKD

Dated: February 17, 2021      Respectfully submitted,

Christopher Hadsell, Plaintiff

[Rest of this page intentionally left blank.]

Christopher Hadsell
Plaintiff
9000 Crow Canyon Rd., S-399
Danville, CA 94506
Email: CJHadsellLaw@gmail.com
Tel: (925) 482-6502

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Christopher Hadsell, | Case No.:   20-cv-03512-VKD |
| Plaintiff, | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S NOTICE OF MOTION TO ALTER, AMEND OR VACATE 2/3/21 ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS COMPLAINT UNDER FRCP 59(e)** |
| vs. | |
| United States of America, the Department of Treasury by its agency, the Internal Revenue Service | |
| Defendants. | |
| | **Date**:   3/9/21 |
| | **Time**:   10:00 a.m. |
| | **Courtroom 2, 5th Floor** |
| | **Judge**:  Hon. Virginia K. DeMarchi |

[Rest of this page intentionally left blank.]

1

Plaintiff's Memorandum of Points and Authorities In Support of Plaintiff's Notice of Motion to Alter, Amend or Vacate 2/3/21 Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Complaint Under FRCP 59(e)

Case No.: 20-cv-03512-VKD

# Table of Contents

**Page**

**TABLE OF AUTHORITIES** ................................................................. 3

**MEMORANDUM OF POINTS AND AUTHORITIES** .................. 4

  **INTRODUCTION** ..................................................................................4

  **LEGAL STANDARD** .............................................................................5

    MOTION TO ALTER, AMEND, OR VACATE AN ORDER UNDER

    FRCP 59(E) ..............................................................................................5

  **STATEMENT OF FACTS** .....................................................................6

  **ARGUMENT** ..........................................................................................7

    THIS MOTION SHOULD BE GRANTED AND THE ATTACHED

      ORDER DENYING THE DEFENDANT'S MOTION TO DISMISS

      SHOULD BE ENTERED ......................................................................8

    When the Law Requires Different Legal Outcomes for Different Fact

      Patterns, Courts Must Rule Accordingly ...............................................8

    Weber vs. This Case ...................................................................................9

      Same Facts ..........................................................................................9

      Different Facts ....................................................................................9

      Different Legal Outcome Required..................................................13

    Snyder vs. This Case ...............................................................................15

      Same Facts ........................................................................................15

      Same Legal Issues ............................................................................15

      Same Legal Analysis ........................................................................15

      Same Legal Outcome Required........................................................16

  **CONCLUSION**....................................................................................16

**EXHIBIT 1: FLOWCHART**........................................................ 19

Plaintiff's Memorandum of Points and Authorities In Support of Plaintiff's Notice of Motion to Alter,
Amend or Vacate 2/3/21 Order Granting in Part and Denying in Part Defendant's Motion to Dismiss
Complaint Under FRCP 59(e)

Case No.:
20-cv-03512-VKD

# TABLE OF AUTHORITIES

## Cases

*Avon Products, Inc. v. United States* (2d Cir. 1978)
  588 F.2d 342 .................................................................................................... 12
*City of Fresno v. U.S.* (E.D. Cal. 2010)
  709 F.Supp.2d 888 ............................................................................................ 5
*Howard v. U.S.* (6th Cir. 2008)
  533 F.3d 472 ...................................................................................................... 5
*In re Block*, 141 B.R. 609 ........................................................................................ 13
*Lyons v. Baughman* (E.D. Cal., May 10, 2007, No. CIVS01412LKKKJMP) 2007
  WL 1378022 ...................................................................................................... 4
*Martin Marietta Corp. v. U. S.* (Ct. Cl. 1978)
  572 F.2d 839 ...................................................................................................... 10
*McDowell v. Calderon* (9th Cir. 1999)
  197 F.3d 1253 .................................................................................................... 5
*Snyder & Assocs. Aquisitions LLC v. United States* (9th Cir. 2017)
  859 F.3d 1152 ......................................................................................... 5, 8, 15, 16
*Weber v. Comm'r*, 138 T.C. 348 .................................................................... 9, 14, 15

## Regulations

26 C.F.R. §301.6402-3(a)(5) (2020) ........................................................................ 12

## Rules

Fed. Rules Civ. Proc., rule 59(e) .......................................................................... 4, 5

## Statutes

26 U.S.C. §7433 ..................................................................................................... 4, 16
28 U.S.C. §1346(b) ................................................................................................. 4, 15
28 U.S.C. §2671-2680 ............................................................................................ 4, 15
28 U.S.C. §2680(c) ................................................................................................. 15, 16
U.S. Const. ............................................................................................................. 10

## Other Authorities

Internal Revenue Service,
  https://www.irs.gov/newsroom/filing-season-statistics-for-week-ending-december-11-2020 (last
  visited February 16, 2021) .................................................................................. 12

3

Plaintiff's Memorandum of Points and Authorities In Support of Plaintiff's Notice of Motion to Alter, Amend or Vacate 2/3/21 Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Complaint Under FRCP 59(e)

Case No.:
20-cv-03512-VKD

# **MEMORANDUM OF POINTS AND AUTHORITIES**

1. **Introduction**:

    **A.**    "Whenever it is reasonably possible, cases should be decided on the merits.", *Lyons v. Baughman* (E.D. Cal., May 10, 2007, No. CIVS01412LKKKJMP) 2007 WL 1378022, *3.

    **B.**    Public policy favors decision of all cases on the merits. Fed. Rules Civ. Proc.[1], rule 59(e) is designed to authorize this Court to act in cases like this one where manifest injustice would result otherwise, and where the Parties and appellate courts can be spared the burden of unnecessary appellate proceedings.

    **C.**    In keeping with these principles, and as discussed *infra*, in concert with the grounds for this motion, and the arguments provided herein that establish manifest injustice will otherwise result, this Court is respectfully asked, with respect to Defendant's Notice of Motion and United States' Motion to Dismiss (Dkt 13), to grant Plaintiff's, Christopher Hadsell ("**Hadsell**"), motion to alter, amend, or vacate the Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Complaint filed 2/3/21 (Dkt 22, "**2/3/21 Order**") under FRCP 59(e) to: i) determine with finality, rather than provisionally, that this Court has subject matter jurisdiction ("**SMJ**") regarding Hadsell's 26 U.S.C. §7433 ("**§7433**") claim, and ii) determine that this Court has SMJ for Hadsell's "**FTCA**"[2] claim.

    **D.**    This motion is brought on the grounds, and the arguments that:

        **i.**    This case requires statutory interpretation; and like all cases, legal reasoning.

            **1.**    In statutory interpretation, in addition to the canons of statutory construction, careful attention must also be applied to: i) words, ii), logic, and iii) sequence of factual events.

                **a.**    If careful attention is applied, a well-drafted statute will withstand attacks by an intellect fired with a desire to skew its meaning.

            **2.**    With all due respect, as argued *infra*, the 2/3/21 Order's statutory interpretation and legal reasoning appear to have: i) failed to distinguish the very different legal outcomes that result from different sequences of factual events, ii) misstated Hadsell's complaint, iii) failed to distinguish that the words "Credit Election" mean different things in different contexts, and iv) held contrary to *Snyder &*

---

[1] Subsequent references to the Fed. Rules of Civ. Proc. will be designated "FRCP".
[2] 28 U.S.C. §§1346(b), 2671-2680.

Plaintiff's Memorandum of Points and Authorities In Support of Plaintiff's Notice of Motion to Alter, Amend or Vacate 2/3/21 Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Complaint Under FRCP 59(e)

Case No.:
20-cv-03512-VKD

*Assocs. Aquisitions LLC v. United States* (9th Cir. 2017) 859 F.3d 1152's holding at 1158 that, "Despite § 2680(c)'s expansive reach, it does not grant the IRS absolute immunity.", by instead holding that, "By offering no real limit to the scope of § 2680(c), the [2/3/21 Order] essentially [provides] absolute immunity for the IRS's actions.", *Id*., 1158-1159.

      **a.**     In fairness, the 2/3/21 Order, 8:13-16 states, "Neither [Party] has pointed to any authority regarding [when] the IRS may be deemed to have irrevocably accepted a credit election, or explained how such acceptance might impact this Court's jurisdiction over []Hadsell's § 7433 claim."

      **b.**     Respectfully, Hadsell disagrees. Nonetheless, he accepts responsibility for any failure in clarity/communication and attempts to rectify any such prior failure in this motion.

      **A)**     To that end, Hadsell hastens to admit that this case is complex because it involves several statutes and cases that interrelate. Therefore, Hadsell provides a flowchart of the logic, and the interrelationships, (" **Exhibit 1**", "**Flowchart**", p. 19) to aid the Court, and with all due respect, to illustrate where the 2/3/21 Order appears to have misapplied the facts and the law resulting in manifest injustice.

**2.**     **Legal Standard**:

    **A.**     **Motion to Alter, Amend, or Vacate an Order Under FRCP 59(e)**:

    **i.**     FRCP 59(e) provides a mechanism for a court to alter, amend, or vacate a prior order, *City of Fresno v. U.S.* (E.D. Cal. 2010) 709 F.Supp.2d 888, 916.

    **ii.**     FRCP 59(e) motions are appropriate, "if the district court… committed clear error or the initial decision was manifestly unjust…", *Fresno*, 916.

    **iii.**     FRCP 59(e) does not specify the grounds on which a court may alter or amend a judgment, or a standard under which a court may grant relief. Courts usually grant these motions when the judgment fails to account for dispositive factual matters or controlling decisions of law, *McDowell v. Calderon* (9th Cir. 1999) 197 F.3d 1253, 1255, and fn. 1.

    **iv.**     By altering, amending, or vacating a judgment under FRCP 59(e), a district court can correct any mistakes thereby, "'sparing the parties and appellate courts the burden of unnecessary appellate proceedings', [Citation]", *Howard v. U.S.* (6th Cir. 2008) 533 F.3d 472.

5

Plaintiff's Memorandum of Points and Authorities In Support of Plaintiff's Notice of Motion to Alter, Amend or Vacate 2/3/21 Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Complaint Under FRCP 59(e)

Case No.:
20-cv-03512-VKD

3. **Statement of Facts**:

A. **Family-Support Case**:

    i.    In addition to the Statement of Facts already provided in this case, a potential elephant in the room is family support because it raises undertones of Dickensian poverty conditions brought about because a dead-beat Dad shirked his responsibilities. Were it true here, such an injustice could certainly fire an intellect to seek justice.

    ii.    However, this case is _**not**_ such a case.

    1.    When Hadsell met his ex-wife, Ms. Cathi Isham (fka Porter, Howard, Hadsell, née "**Isham**"), she was hopelessly bankrupt, and only a brief matter of time before being forced into bankruptcy proceedings by her creditors.

    2.    Hadsell took her in and provided her with shelter, food, a car, and fulfilled all of her financial needs except for her personal upkeep so that she could devote her entire net earnings to eliminating her debt. It was only after divorce proceedings began that Hadsell learned Isham's debt reduction, prior to the marriage, included defrauding her bank and mortgage insurance company on the short sale of her home by failing to disclose her retirement funds to them.

    3.    In 2000, after four years into their relationship, and two years of marriage, Hadsell retired and moved to Lake Tahoe to devote fulltime to his family. Isham also stopped working at that time and contributed nothing financially to the marital estate afterward.

    4.    As a result, the entirety of the marital estate was solely Hadsells' separate property.

    5.    When Hadsell learned of Isham's infidelity, Hadsell filed for divorce.

    6.    Despite Isham having no interest in the marital estate, and having committed adultery, as the mother of Hadsell's children, within two months of separation, while living amicably in the same household, Hadsell provided Isham with two successive marriage settlement agreements ("MSA") that provided Isham with more than half of Hadsell's assets (she was provided the larger, current household). They have 50/50 child custody.

    7.    While continuing to dissolve the marriage amicably, within months of separation, Hadsell provided Isham with no debt, and over $1.1 million in cash. At 47, that provided Isham with

6

Plaintiff's Memorandum of Points and Authorities In Support of Plaintiff's Notice of Motion to Alter, Amend or Vacate 2/3/21 Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Complaint Under FRCP 59(e)

Case No.:
20-cv-03512-VKD

*after-tax* income greater than the ***pre-tax*** average California family (with one earner and three children) for more than 25 years (till age 72, and only 10 of the 25 years with minor children). Hadsell also provided another $0.5 million as investments matured, over $0.25 million from his retirement assets, and over $54K in support payments—thus nearly $2 million of ***after-tax*** money.

8.    Isham is healthy, and had a previous career, so she is employed and has additional income.

9.    Again, solely from Hadsell's separate property, each of his three children received a trust fund of at least $500,000 on reaching his/her 18th birthday.

a.    His elder son is due to graduate from the University of Nevada this fall.

b.    His younger son is due to graduate from the University of Texas at Austin in the summer of 2022 (although achieving his Bioengineering degree make take longer).

c.    His daughter turned 18 last month and received her trust fund, and is headed to university this fall.

10.    These financial provisions to his family have nearly exhausted Hadsell's assets.

11.    Since 1996, no one, including Isham, has ever asserted that Hadsell's children, or Isham, are/were in financial need of anything.

a.    Notwithstanding, Isham's lawyer ran up legal fees by appealing to Isham's guilt over her adultery by claiming that she was being treated unfairly by Hadsell. It is undisputed that Isham's lawyer filed a motion in which the court had no subject matter jurisdiction, and defrauded the court. Thus, although Isham's lawyer obtained a judgment through fraud, he could not attempt enforcement lest his actions become known. Therefore, he sought collection through the Department of Child Support Services ("DCSS").

b.    DCSS is aware of the fraud. It too isn't seeking enforcement through legal proceedings. However, its bureaucratic, and mindless computer-automated administrative processes remain at work, ultimately being the but-for cause in the illegal taking of Hadsell's funds in this case.

4.    **Argument**

A.    **This Motion Should Be Granted and the Attached Order Denying the Defendant's**

7

**Motion to Dismiss Should Be Entered**:

With all due respect, the 2/3/21 Order appears to: i) fail to distinguish the very different legal effects that result from different sequences of factual events, ii) incorrectly use words as though they were interchangeable, iii) misstate Hadsell's complaint, and iv) contrary to *Snyder*, 1158-1159, "By offering no real limit to the scope of § 2680(c), the [2/3/21 Order] essentially [provides] absolute immunity for the IRS's actions." Analyses of these issues are provided as follows:

      **i.**     **When the Law Requires Different Legal Outcomes for Different Fact Patterns, Courts Must Rule Accordingly**:

      **1.**     This case is not complicated because the facts, or the law, are difficult to comprehend. It's complicated because the facts, and their sequence, must be kept straight while applying the correct laws.

      **2.**     A picture is worth a thousand words. The Flowchart on p. 19 is such a picture.

      **a.**     Through the use of graphical shapes and connecting arrows among them, use of the Flowchart keeps the facts, and their sequence straight, while applying the correct laws.

      **b.**     The logical "flow" is followed by beginning at the     ⬭ Start     graphic, and following the one-way arrows until reaching an   ⬭ End   graphic.

      **c.**     A green-diamond graphic represents a "decision point". It denotes a question, or a branch, in the flowchart sequence.

      **A)**     Thus, a decision point has an arrow leading into it, and the answer to the decision dictates which arrow (labeled with the answer) to follow leading out of the graphic.

      **d.**     A blue-rectangle graphic represents a "process". It denotes something to be done, or an action to be taken.

      **e.**     Taken as a whole, a flowchart creates a visual depiction of how the individual pieces fit together within a logical system.

      **f.**     For reference purposes, each graphic is assigned a number.

      **3.**     The Flowchart depicts two indispensable threshold issues for this case.

      **a.**     **Overpayment Threshold**: An "**Overpayment**" occurs when a taxpayer makes

8

Plaintiff's Memorandum of Points and Authorities In Support of Plaintiff's Notice of Motion to Alter, Amend or Vacate 2/3/21 Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Complaint Under FRCP 59(e)

Case No.:
20-cv-03512-VKD

tax payments that exceed the taxpayer's tax liability. Overpayment is a crucial issue because as Graphics 2 and 3 depict, unless an overpayment occurs, no refund, or credit election, analysis can result.

        **A)**    Here, there is no dispute that this case involves overpayments.

      **b.**    **Refund vs Credit Election Threshold**: As the red-outlined rectangles show, in Venn-Diagram fashion, once a refund or credit election has been determined, there is no overlap at all between the facts and the law of the "**Refund Universe**" vs. the "**Credit Election Universe**". This is a crucial issue because it determines what law is applicable, and what law is inapplicable, in this case.

        **A)**    As discussed next, respectfully, the 2/3/21 Order appears to misapply the law because it fails to use the proper fact sequence in this case, and therefore, applies the law incorrectly.

      **4.**    *Weber* **vs. This Case**:

      **a.**    **Same Facts**: In *Weber v. Comm'r,* 138 T.C. 348, 349, Mr. Weber ("**Weber**") filed his 2006 Tax Return in October 2007, he reported an overpayment, and made a ***Credit Election Decision*** to apply his overpayment to his, next-year, 2007 taxes. At this initial stage, for the Flowchart, this means Graphic 2 was answered "Yes", so the logic arrow flows to Graphic 4. Graphic 4 was answered "Yes", so the logic arrow flows to Graphic 12. The *Weber* Court assumes, 351, that Weber filed his 2007 Tax Return after August 2008. Again, he reported an overpayment, and made a ***Credit Election Decision*** to apply his overpayment to his next-year, 2008 taxes. Thus far, the initial *Weber* facts are the same as this case.

      **b.**    **Different Facts**:

        **A)**    **IRS Rejected Weber's Credit Election Decisions**: In *Weber*, 352, in November, 2007, ***the next month*** following Mr. Weber's 2006 Tax Return filing and ***Credit Election Decision***, the IRS wrote him a letter stating that the IRS rejected his ***Credit Election Decision***. Thus, for Graphic 12, the answer is "No" so the logic arrow flows into the Refund Universe and Graphic 5, and ***not*** the Credit Election Universe. The IRS also wrote a letter to Mr. Weber, on 11/24/8, ***about 90 days after*** his 2007 Tax Return filing, stating that the IRS rejected his 2007 ***Credit Election Decision*** because he had a tax balance due rather than an overpayment. Thus, as discussed *supra* for this circumstance, the IRS rejected his Credit Election Decision at Graphic 2 because there was no overpayment; thus, there

9

Plaintiff's Memorandum of Points and Authorities In Support of Plaintiff's Notice of Motion to Alter, Amend or Vacate 2/3/21 Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Complaint Under FRCP 59(e)

Case No.: 20-cv-03512-VKD

1   was neither a refund, nor credit election funds, to analyze.

2                    **B)   IRS Accepted Hadsell's Credit Election Decisions**:

3                        **i)   The 2/3/21 Order Found IRS Accepted Hadsell's _Credit Election_**

4   **_Decisions_**:

5                            **1)**   Here, Hadsell made overpayments and **_Credit Election Decisions_**. And

6   the 2/3/21 Order found that the IRS credited Hadsell's **_Credit Election Funds_** to his account, _Id._, 8:21-

7   23. Thus, the 2/3/21 Order found that Graphic 12 was answered "Yes", so the logic arrow flows to the

8   Credit Election Universe and the applicable law to those fact patterns, and **_not_** to the Refund Universe

9   and the applicable law for those fact patterns.

10                           **a)**   Thus, there is no applicable law that empowers the IRS to make any

11  offset to **_Credit Election Funds_**; especially not the offsets applicable to refunds.

12                           **b)**   The U.S. Const. is an enumerated-powers constitution. Thus, with no

13  law empowering the IRS to make any offsets to **_Credit Election Funds_**, it cannot do so.

14                           **c)**   Equally important, there is applicable law (e.g., _Martin Marietta_

15  _Corp. v. U. S._ (Ct. Cl. 1978) 572 F.2d 839, 842) that prohibits the IRS from revoking its acceptance of a

16  **_Credit Election Decision_**, and thereby, prohibits the IRS from doing anything with **_Credit Election_**

17  **_Funds_** other than apply them to a taxpayer's next year tax liabilities.

18                           **d)**   This Court asked Defendant's counsel if there were any other

19  authority on these issues. If one merely Shepardizes _Martin Marietta_, there are at least 27 citations to

20  _Martin Marietta_–16 federal court cites (including this case) and 11 IRS Agency Materials cites. The

21  cites discuss interest payments, and/or irrevocability. Other than the 2/3/21 Order, which is equivocal on

22  irrevocability (based upon insufficient briefing and argument _Id._, 8:12-13), the citations are unanimous

23  that no interest is earned on **_Credit Election Funds_**, and/or **_Credit Election Decisions_** are irrevocable by

24  both the taxpayer and the IRS.

25                        **ii)   Additional Facts/Factors That IRS Accepted Hadsell's _Credit Election_**

26  **_Decisions_**: As the discussion immediately _infra_ provides, there are at least four factual distinctions

27  between Refunds and **_Credit Election Funds_**. The distinctions indicate that the law regarding **_Credit_**

28

Plaintiff's Memorandum of Points and Authorities In Support of Plaintiff's Notice of Motion to Alter,
Amend or Vacate 2/3/21 Order Granting in Part and Denying in Part Defendant's Motion to Dismiss
Complaint Under FRCP 59(e)                                                           Case No.:
                                                                                    20-cv-03512-VKD

**_Election Funds_** is for the benefit of the government, **_not_** the taxpayer.

            **1)**      **Factual Distinctions**: The primary distinctions between Refunds and **_Credit Election Funds_**, as provided in detail *infra*, are that: i) a refund is generally promptly paid, ii) the IRS notifies the taxpayer promptly after filing his/her tax return if a **_Credit Election Decision_** is not accepted, iii) no interest is earned on **_Credit Election Funds_**, and iv) **_Credit Election Funds_** can **_only_** be used as tax payments toward a taxpayer's next year tax liabilities.

            **a)**      If Hadsell's **_Credit Election Funds_** were instead a refund, they would have been repaid years ago. They were not.

            **b)**      As discussed *supra*, the IRS generally informs a taxpayer within 30-90 days of filing a tax return that the IRS denied a **_Credit Election Decision_**. Here, the IRS never informed Hadsell that his **_Credit Election Decision_** was denied.

            **c)**      Because the IRS knows it is dealing with **_Credit Election Funds_**, it provided no interest earned on Hadsell's funds in its calculations.

            **d)**      Because this Court found that the IRS applied Hadsell's overpayment as a credit to his tax account, it is clear those funds are **_Credit Election Funds_**. Additionally, the IRS held the funds for years, never communicated a denial of Hadsell's **_Credit Election Decision_**, and never included interest its calculations. All these facts indicate that even though the IRS acted as though it could revoke its acceptance of Hadsell's **_Credit Election Decision_**, its action must be seen as a violation of law, and therefore, cannot be counted as a legitimate revocation.

            **e)**      Therefore, the only legitimate conclusion that can be found is that the Additional Facts/Factors further support the 2/3/21 Order's finding that the IRS accepted Hadsell's **_Credit Election Decisions_**. As discussed next, in addition to the law, the benefits that would be lost to the government indicate that this Court should properly conclude the IRS cannot revoke a taxpayer's **_Credit Election Decision_** once the IRS has accepted it.

            **2)**      **Miniscule Taxpayer Benefit**: The benefit to the taxpayer of funds determined to be **_Credit Election Funds_** is that the taxpayer need not make a tax payment to the government. Instead, s/he can designate that taxpayer funds held in trust by the government can be

Plaintiff's Memorandum of Points and Authorities In Support of Plaintiff's Notice of Motion to Alter, Amend or Vacate 2/3/21 Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Complaint Under FRCP 59(e)

Case No.:
20-cv-03512-VKD

converted to a tax payment to the government. This is a miniscule benefit since the taxpayer is
unfettered to accomplish the exact same thing merely by depositing his/her refund and making a
payment to the government from those exact same funds.

> **3)   Gargantuan Government Benefits**: The benefits to the government
are at least threefold, and they are gargantuan:

> > **a)   Billions of Dollars Interest-Free**: No interest is earned on ***Credit
Election Funds***, 26 C.F.R. §301.6402-3(a)(5) (2020). Statistics are not readily available as to how many
taxpayers elected to have available overpayments converted to tax payments rather than be refunded.
However, if only 1% of the available $320.9 billion in refunds for tax year 2020 as of 12/11/20 [Internal
Revenue Service, https://www.irs.gov/newsroom/filing-season-statistics-for-week-ending-december-11-
2020 (last visited February 16, 2021)] resulted in taxpayer ***Credit Election Funds***, then billions of
dollars are provided, interest free, for the government's use—a boon to the government.

> > **b)   Penalties, Lates Fees, Interest Paid to Government**: If a
taxpayer's return is later amended, or adjusted, to determine an additional tax liability, even though
available tax payments were literally in the government's coffers, because the funds are irrevocably
dedicated solely to the taxpayer's succeeding year tax, the additional tax liability results in not only
additional tax payments (fair enough), but harshly, the taxpayer must pay any penalties, late fees, and
***interest earned*** for the time between when the tax was due and unpaid, and when payment was made,
*Avon Products, Inc. v. United States* (2d Cir. 1978) 588 F.2d 342, 345. Since tax
amendments/adjustments are generally years later than when payment was due, this represents years of
interest earned for the government—a gift to the government.

> > **c)   Credit Election Funds Retained by IRS in Bankruptcy Cases**:
Bankruptcy cases can be complex. However, in essence, they are nothing more than a debtor's liabilities
being wiped away in exchange for all of the debtor's assets (except for bare essentials). Thus, the only
substantive issue is how the debtor's assets will be allocated among the creditors. An ordinary allocation
results in taxes being paid in full, secured creditors receiving some payment, and unsecured creditors
receiving nothing. In any ordinary situation, a prepayment is an asset, not a liability. Thus, the prepaid

Plaintiff's Memorandum of Points and Authorities In Support of Plaintiff's Notice of Motion to Alter,
Amend or Vacate 2/3/21 Order Granting in Part and Denying in Part Defendant's Motion to Dismiss
Complaint Under FRCP 59(e)

Case No.:
20-cv-03512-VKD

taxes asset would be turned over the debtor's estate for distribution to creditors. However, because of the irrevocability of Credit Election Funds, even though the government is *not even a creditor*, the courts have ruled (e.g., *In re Block*, 141 B.R. 609, 610) that the IRS can keep ***Credit Election Funds***—a windfall to the government.

      **4)**     The 2/3/21 Order, 8:13-16 states, "Neither [Party] has pointed to any authority regarding the circumstances under which, as []Hadsell contends, the IRS may be deemed to have irrevocably accepted a credit election, or explained how such acceptance might impact this Court's jurisdiction over Mr. Hadsell's § 7433 claim." In light of these gargantuan benefits the government owns because the law so provides, and the IRS has so argued in courts, if this Court were to rule the IRS can revoke a ***Credit Election Decision*** it had accepted, these benefits would be lost because the ***Credit Election Funds*** would be classified as a Refund instead with applicable law that would remove the government's benefits.

      **c.**     **Different Legal Outcome Required**:

      **A)**     **2/3/21 Order Appears to Misstate Hadsell's Claim**:

      **i)**     As can be noted above, Hadsell has been careful to highlight whether he is referring to a ***Credit Election Decision*** (Graphic 12) vs. ***Credit Election Funds*** (Graphics 13-16). The reason for this is because the courts have routinely referred to both as a Credit Election—unfortunately, leaving to context, which issue it is discussing.

      **ii)**     The 2/3/21 Order, 9:4-9 states (color highlights added):

Hadsell claims that the IRS improperly failed to honor his <mark>2016 credit election</mark> and his August 6, 2018 letter <mark>conditioning</mark> his $2,448 healthcare tax <mark>payment on application of that sum to his 2018 tax liabilities</mark>.

      **iii)**     First, Hadsell's $13,000+ claim is based upon ***the net of*** i) his multiple years', numerous, total tax payments plus his ***Credit Election Funds*** (not just the two in the quote), ii) less his total tax liabilities over the same timeframe.

      **iv)**     Second, while "credit election" could refer to ***Credit Election Funds***, in context, it is clear that the 2/3/21 Order is referring to Hadsell's ***Credit Election Decisions*** because no distinction is made between the 2016 and 2018 payments, and the 2018 payment is referred to as

13

Plaintiff's Memorandum of Points and Authorities In Support of Plaintiff's Notice of Motion to Alter, Amend or Vacate 2/3/21 Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Complaint Under FRCP 59(e)

Case No.:
20-cv-03512-VKD

"conditioning" those funds "on application" that they apply to his next year tax liabilities—a ***Credit Election Decision***. That is ***not*** Hadsell's claim.

               **v)**     Hadsell's claim is that once the IRS has accepted a ***Credit Election Decision***, those funds become ***Credit Election Funds***. Once the funds become ***Credit Election Funds***, neither the taxpayer, nor the IRS, can revoke the ***Credit Election Decision***. Thus, unlike Refund monies, there is no legal authority for the IRS to do anything with ***Credit Election Funds*** other than apply them to the taxpayer's succeeding year tax liabilities (viz,, that is a difference between the Refund Universe and the Credit Election Universe).

               **B)**     In fairness, the 2/3/21 Order does touch upon the distinction when it states:

> Hadsell cites some authority suggesting that, absent any notices to the contrary, there may have been point(s) in time when he reasonably may have relied on the assumption that the IRS accepted his 2016 credit election.
> *Id*., 8:16-19.

               **C)**     Notwithstanding, the 2/3/21 Order, 5:12-14 appears to demonstrate that it misunderstands Hadsell's claim, and/or falls prey to misunderstanding the context when Credit Election is referring to ***Credit Election Decision*** rather than ***Credit Election Funds*** when it states *Weber* applies to this case when *Weber* is referring to a ***Credit Election Decision*** rather than ***Credit Election Funds***:

> [In] one decision examining § 6402 and related regulations with respect to a taxpayer's credit election, the Tax Court has stated that "[26 C.F.R.] section 301.6402-3(a)(6) makes it clear that the taxpayer's election to apply an overpayment to the succeeding year is *not* binding on the IRS[.]" *Weber*, 138 T.C. at 357 (emphasis added). "Thus, a taxpayer may request a credit elect overpayment, but the IRS has discretion whether to allow it or instead to credit the overpayment to another liability owed by the taxpayer or to refund it."

               **D)**     As discussed *supra*, Weber could not have possibly obtained ***Credit Election Funds*** because the IRS informed Weber that it denied his ***Credit Election Decisions***. Thus, when the *Weber* court speaks in support of the IRS' discretion to deny a taxpayer's ***Credit Election Decision*** (the only issue before the *Weber* court) it properly states, "[T]he taxpayer's *election to apply* an overpayment… is not binding on the IRS", *Id*., 357 (emphasis added), and "[T]he taxpayer *may request* a credit elect overpayment, but the IRS has discretion whether to allow it…", Id. (emphasis added). An "election to apply" and "may request" are all at the ***Credit Election Decision*** stage, ***not*** the ***Credit***

Plaintiff's Memorandum of Points and Authorities In Support of Plaintiff's Notice of Motion to Alter, Amend or Vacate 2/3/21 Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Complaint Under FRCP 59(e)

Case No.:
20-cv-03512-VKD

1 ***Election Funds*** stage.

2          **E)**     Thus, with all due respect, because the 2/3/21 Order appears to suggest

3 Hadsell's claim is about his ***Credit Election Decisions***, and that *Weber*'s ***Credit Election Decision***

4 discussion applies to this case (rather than, at best, as potential preamble to reach the ***Credit Election***

5 ***Funds*** issue in this case), it appears that the 2/3/21 Order: i) misstates Hadsell's claim, ii) doesn't

6 properly distinguish the context for when Credit Election (or similar phrases) mean ***Credit Election***

7 ***Decision*** or ***Credit Election Funds***, and therefore, iv) misapplies ***Credit Election Decision*** law to this

8 case rather than ***Credit Election Funds*** law.

9          **5.**     *Snyder* **vs. This Case**:

10          **a.**     **Same Facts**: In *Snyder & Assocs. Aquisitions LLC v. United States* (9th Cir.

11 2017) 859 F.3d 1152, 1161, the IRS permanently deprived the plaintiffs of their funds by directing their

12 funds to a purpose to which the plaintiffs did not consent. When the plaintiffs requested return of their

13 funds, the IRS refused. That is the same fact pattern here. The IRS directed Hadsell's funds to a purpose

14 to which Hadsell did not consent, and permanently deprived him of his funds—even stronger here, the

15 IRS is prohibited from the disposition of Hadsell's funds in the manner it did. When Hadsell requested

16 return of his funds, the IRS refused.

17          **b.**     **Same Legal Issues**: In *Snyder*, the plaintiffs pursued return of their funds

18 pursuant to the FTCA. The IRS claimed immunity pursuant to 28 U.S.C. §2680(c) ["**§2680(c)**"]. The

19 same legal issues apply to this case.

20          **c.**     **Same Legal Analysis**:

21          **A)**     *Snyder*, 1158, states, "The government perfunctorily concedes that the IRS is

22 not entitled to absolute immunity…". However, it goes on to say that the IRS argued that under the

23 government's reading of §2680(c), even if an IRS agent driving a government car runs a stop sign

24 (presumably unintentionally, and to present the best possible case, acting pursuant to the assessment or

25 collection of taxes) and hits someone, its exposure to liability for the on-duty auto accident would fall

26 within §2680(c)'s exception to the waiver of sovereign immunity. The *Snyder* Court rejected this

27 argument stating, even though the IRS admitted no absolute immunity applied, "By offering no real

28

Case No.:
20-cv-03512-VKD

1  limit to the scope of § 2680(c), the government essentially seeks absolute immunity for the IRS's

2  actions.", *Id*., 1158-1159.

3            **B)**      The same legal analysis in this case is even stronger. Here, the IRS

4  committed an intentional tort (embezzlement) rather than an unintentional tort. And neither the IRS, nor

5  the 2/3/21 Order provides any limit at all to §2680(c)'s scope[3], when in fact, the law prohibits the IRS

6  from revoking a ***Credit Election Decision*** it accepted, and therefore, prohibits the IRS from directing

7  ***Credit Election Funds*** to any purpose other than a taxpayer's succeeding year tax liabilities.

8            **d.      Same Legal Outcome Required**: Because *Snyder* and this case involve the

9  same fact pattern, the same legal issues, and this case has even stronger legal analysis, stare decisis

10 dictates that the outcome should be the same: §2680(c)'s scope does not bar Hadsell's FTCA claim.

11       **5.      Conclusion:**

12       **A.**    It's no wonder the 2/3/21 Order took a long time to be issued. It's clear Your Honor

13 waded through thorny thickets to issue its opinion. This motion only quibbles with two issues, but

14 they're significant:

15       **i.**      The 2/3/21 Order appears to conflate ***Credit Election Decisions*** with ***Credit Election***

16 ***Funds***, thereby reaching only a preliminary decision about SMJ for Hadsell's 7433 claim; and

17       **ii.**      Pursuant to *Snyder*, if an FTCA claim involving an unintentional tort argument, and an

18 intentional tort in reality, even if they were committed within the scope of the assessment or collection

19 of a tax, are not barred by §2680(c), then clearly an intentional tort, when the IRS' actions are barred by

20 law, and are outside the scope of the assessment or collection of a tax, then the Court has SMJ here for

21 Hadsell's FTCA claim.

22       **B.**    Thus, failure to grant this motion and alter, vacate, or amend the 2/3/21 Order would

23 result in manifest injustice.

24     For these reasons, and the facts, law, and argument provided *supra*, Hadsell requests this Court to

25 grant this motion.

26 _____

27 [3] The same as in *Snyder*, the  2/3/21 Order quotes *Snyder* that no absolute immunity applies, *Id*. 10:27-11:1, but just like the IRS provided no limit to §2680(c)'s scope, the  2/3/21 Order, 11:14 did the same because it only states, "Here, the Court

28 concludes that § 2680(c) applies.", and thus, with no limits.

16

Plaintiff's Memorandum of Points and Authorities In Support of Plaintiff's Notice of Motion to Alter, Amend or Vacate 2/3/21 Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Complaint Under FRCP 59(e)

Case No.:
20-cv-03512-VKD

1      Dated: February 17, 2021                    Respectfully submitted,

2                                                   _Christopher Hadsell_____

3  [Rest of this page intentionally left blank.]    Christopher Hadsell, Plaintiff

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff's Memorandum of Points and Authorities In Support of Plaintiff's Notice of Motion to Alter,          Case No.:
Amend or Vacate 2/3/21 Order Granting in Part and Denying in Part Defendant's Motion to Dismiss          20-cv-03512-VKD
Complaint Under FRCP 59(e)

# Exhibit 1

Plaintiff's Memorandum of Points and Authorities In Support of Plaintiff's Notice of Motion to Alter,                    Case No.:
Amend or Vacate 2/3/21 Order Granting in Part and Denying in Part Defendant's Motion to Dismiss                  20-cv-03512-VKD
Complaint Under FRCP 59(e)

# Exhibit 1
# Flowchart



Christopher Hadsell
9000 Crow Canyon Rd., S-399
Danville, CA 94506
Email: CJHadsellLaw@gmail.com
Tel: (925) 482-6502

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Christopher Hadsell, | Case No.:   20-cv-03512-VKD |
|    Plaintiff, | **DECLARATION OF HADSELL IN SUPPORT OF PLAINTIFF'S NOTICE OF MOTION AND MOTION TO ALTER, AMEND, OR VACATE 2/3/21 ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS COMPLAINT UNDER FRCP 59(e)** |
| vs. | |
| United States of America, the Department of Treasury by its agency, the Internal Revenue Service | |
|    Defendant. | |

I, CHRISTOPHER HADSELL, ("**Hadsell**") declare that I am over the age of 18 and I am the

Plaintiff in this matter. I offer my declaration in lieu of personal testimony pursuant to 28 U.S.C. §1746.

If called upon to testify, I would do so of my own knowledge as to the following:

1. This declaration is submitted in support of the Plaintiff's Notice of Motion and Motion to

    Alter, Amend, or Vacate 2/3/21 Order Granting in Part and Denying in Part Defendant's

    Motion to Dismiss Complaint Under FRCP 59(e) ["**Ntc & MOT Per FRCP 59(e)**"].

2. The facts provided in the Ntc & MOT Per FRCP 59(e), §3.A.ii. p. 8, et seq. (which are

    incorporated by reference as though fully set forth herein) are within my personal knowledge

    as a party to this matter.

    I declare under penalty of perjury that the foregoing is true and correct. Executed on February

17, 2021.

*Christopher Hadsell*

Christopher Hadsell, Plaintiff

Christopher Hadsell
Plaintiff
9000 Crow Canyon Rd., S-399
Danville, CA 94506
Email: 18.CV.00293@gmail.com
Tel: (925) 482-6502

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

Christopher Hadsell,

   Plaintiff,

vs.

United States of America, the Department of Treasury by its agency, the Internal Revenue Service

   Defendants.

Case No.:   4:18-cv-00293-KAW

**[PROPOSED] ORDER PLAINTIFF'S NOTICE OF MOTION AND MOTION TO ALTER, AMEND, OR VACATE 2/3/21 ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS COMPLAINT UNDER FRCP 59(e)**

[Rest of this page intentionally left blank.]

1

[Proposed] Order Plaintiff's Notice of Motion and Motion to Alter, Amend, or Vacate 2/3/21 Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Complaint Under FRCP 59(e)

Case No.:
4:18-cv-00293-KAW

1    On the motion (Dkt 23) of Plaintiff, Christopher Hadsell ("**Hadsell**") notice of which was served and

2 filed, and heard, and on the evidence and affidavits presented to the court and on the records, files, and

3 proceedings in the above-entitled cause, it appears to the Court that the judgment as previously entered

4 in the action (Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Complaint

5 filed 2/3/21, Dkt 22") requires alteration to correctly state the judgment of the Court.

6    Accordingly, the judgment and the record shall be, and they are, amended in the following respects:

7    This Court has subject matter jurisdiction for Hadsell's 26 U.S.C. §7433 claim, and for Hadsell's

8 FTCA[1] claim.

9    The Defendant's motion to dismiss (Dkt 13) is **DENIED**.

10    It is further ordered that the clerk make on the original record a marginal reference to this order and

11 amendment.

12    Pursuant to Fed. Rules Civ.Proc., rule 12(a)(4)(A), all defendants who have not already filed a

13 responsive pleading must serve a responsive pleading within 14 days after notice of this order.

14    **IT IS SO ORDERED**.

15

16

17    Dated:  _____    _____

18                                    Hon. Virginia K. DeMarci
                                       United States Magistrate Judge

19

20

21

22

23

24

25

26

27

28

---

[1] 28 U.S.C. §§1346(b), 2671-2680.