Christopher Hadsell
Plaintiff
9000 Crow Canyon Rd., S-399
Danville, CA 94506
Email: CJHadsellLaw@gmail.com
Tel: (925) 482-6502

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| Christopher Hadsell, | Case No.:   20-cv-03512-VKD |
|---|---|
| Plaintiff, | **PLAINTIFF'S REPLY TO (DKT 31) IRS' OPPOSITION TO (DKT 25) PLAINTIFF'S NOTICE & MOTION TO ALTER, AMEND, VACATE (DKT 22) JUDGMENT RE (DKT 13) IRS' NOTICE & MOTION TO DISMISS (DKT 1) PLAINTIFF'S COMPLAINT** |
| vs. | |
| United States of America, the Department of Treasury by its agency, the Internal Revenue Service | |
| Defendants. | **Date**:   5/4/21<br>**Time**:   10:00 a.m.<br>**Courtroom 2, 5th Floor**<br>**Judge:**  Hon. Virginia K. DeMarchi |

1. **Hadsell Apology**: In Mr. Hadsell's ("**Hadsell**") 3/29/21 response (Dkt 29, 2:8-13) to the Defendant's ("**IRS**") 3/25/21 Motion (Dkt 27), he noted that four days to file his response appeared inequitable. In the Court's 4/2/21 Order (Dkt 30, 1:28, fn 1), the Court correctly notes that N.D. Cal. Civil L.R. 6-3(b)[1] provides for four days. Hadsell uses Lexis/Nexus for legal research. When one looks up Civ. L.R. 6-3 on Lexis/Nexus, it provides Civ. L.R. 6-3(a), but fails to provide Civ. L.Rs. 6-3(b)-(d)[2]. Notwithstanding, the Court provides its local rules on its website; therefore, Hadsell has no excuse for his mistake and sincerely apologies for the error and any inconvenience that it caused[3].

2. **Threshold Issue: FRCP 59(e) vs. Civ. L.R. 7-9:**

   A. **Judgment Defined**: Fed. Rules Civ. Proc. R. 54(a)[4] defines judgment: " 'Judgment' as

---

[1] Subsequent references to the N.D. Cal. Civil L.R. will be designated "**Civ. L.R.**".
[2] Hadsell has emailed Lexis/Nexus requesting that it repair the deficiency.
[3] Hadsell's philosophy is that mistakes are natural—without them, there would be no evolution. So, instead of treating them as disasters, he makes them easy to acknowledge and easy to fix.
[4] Subsequent references to the Fed. Rules Civ. Proc. will be designated "**FRCP**".

1

used in these rules includes a decree and any order from which an appeal lies."

B. **Appealability of Interlocutory Judgment of Fewer Than All Claims:**

    **i.** A claimant can make multiple claims regarding his/her injury, FRCP 8(d)(3). Here, Hadsell makes two claims: one based upon 26 U.S.C. §7433 ("**§7433**") and one based upon the FTCA, 28 U.S.C. §§1346(b), 2671-2680.

    **ii.** A district court may order a final judgment to be entered as to fewer than all the claims in an action [FRCP 54(b)] provided the court addresses two issues: i) it must determine that the action is ***final*** (as discussed *infra*) as to the claim(s) to which the judgment applies, and ii) it must make an express determination that "there is no just reason for delay.", *Id*.

    **1. Finality:**

      **a.** Regarding finality of interlocutory judgments, *Gillespie v. United States Steel Corp.* (1964) 379 U.S. 148, 152, instructs:

> [O]ur cases long have recognized that whether a ruling is "final" within the meaning of § 1291 is frequently so close a question that decision of that issue either way can be supported with equally forceful arguments, and that it is impossible to devise a formula to resolve all marginal cases coming within what might well be called the "twilight zone"[5] of finality. Because of this difficulty this Court has held that the requirement of finality is to be given a "practical rather than a technical construction." [Citations.] *Dickinson v. Petroleum Conversion Corp.*, 338 U.S. 507, 511, pointed out that in deciding the question of finality the most important competing considerations are "the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other." It is true that the review of this case by the Court of Appeals could be called "piecemeal"; but it does not appear that the inconvenience and cost of trying this case will be greater because the Court of Appeals decided the issues raised instead of compelling the parties to go to trial with them unanswered.

      **b. Conclusion—Finality:** Because subject matter jurisdiction ("**SMJ**") determines whether the Court has jurisdiction to adjudicate this case, it cannot be legitimately challenged that the Court's 2/3/17 Order is both: i) best construed as a practical decision rather than a technical one, and ii) the costs will be significantly less if the Court decides the SMJ issues prior to trial. Therefore, the Court's 2/3/21 Order ("**2/3/21 Order**") meets the requirements of finality.

    **2. No Just Reason for Delay:**

      **a.** "No just reason for delay" aren't "magic words" the Court must use[6]. Instead,

---

[5] A television series in which the characters find themselves dealing with disturbing or unusual events, an experience described as entering "the Twilight Zone".

[6] *Dairy Am., Inc. v. New York Marine & Gen. Ins. Co.* (E.D.Cal. Nov. 2, 2009, No. CV F 07-0537 LJO SMS) 2009, *8

2

Plaintiff's Reply to (Dkt 31) IRS' Opposition to (Dkt 25) Plaintiff's Notice & Motion to Alter, Amend, Vacate (Dkt 22) Judgment re (Dkt 13) IRS' Notice & Motion to Dismiss (Dkt 1) Plaintiff's Complaint     Case No.: 20-cv-03512-VKD

the foci of no just reason for delay are: i) administrative interests (viz., whether the issues in an adjudicated claim overlap a remaining claim such that the appellate court "will have to revisit the same facts—spun only slightly differently—in a successive appeal"), and ii) balancing the equities of delay, *California v. Trump* (N.D.Cal. 2019) 407 F. Supp. 3d 869, 907-908.

        **A)**    **Overlap:** Because the issues regarding SMJ are completely distinct from the issues of Hadsell's claims, there is no overlap of issues.

        **B)**    **Equity Balancing:** A court must maintain SMJ at all times. Therefore, it is impossible to delay the Court's decision on SMJ until after trial.

    **b.**    **Conclusion—No Just Reason for Delay:** Because there is no overlap of issues, and the Court's decision on SMJ cannot be delayed, the 2/3/21 Order meets the requirements of No Just Reason for Delay.

    **iii.**    **Conclusion—Appealability of 2/3/21 Order:** Because the 2/3/21 Order meets the requirements of: i) Finality and ii) No Just Reason for Delay, it is appealable.

**C.**    **FRCP 59(e) Applies:**

    **i.**    Because the 2/3/21 Order is appealable, it is a judgment. Because the 2/3/21 Order is an appealable judgment[7], FRCP 59(e) applies.

    **ii.**    Notwithstanding, it appears that for all practical purposes, the standard of review, and the legal analysis, is the same under FRCP 59(e) and Civ. L.R. 7-9. Therefore, Hadsell consents to the

---

(Quoting from *Kelly v. Lee's Old Fashioned Hamburgers, Inc.*, (5th Cir. 1990) 908 F.2d 1218, 1220).

[7] Implicit in the discussion *supra* is the adjudication of a "claim". For the 2/3/21 Order regarding Hadsell's FTCA Claim, that circumstance applies. However, regarding Hadsell's §7433 Claim, the 2/3/21 Order adjudicated the SMJ issue for the claim; thus, arguably, it is distinguishable because it didn't dispose of the entire claim. Additionally, it is concerning that the Court stated, "no judgment has been entered in this case.", Dkt 26, 1:21. Respectfully, regarding that comment, it appears the Court had in mind the "final judgment of a case" rather than an interlocutory judgment because: i) both parties inferred the 2/3/21 Order was intended as a final judgment regarding the SMJ of the §7433 Claim (for the IRS, see Dkt 31, 2:17-19); ii) the comment would imply the 2/3/21 Order was ***not*** intended to effect the dismissal of Hadsell's FTCA claim until after the trial is over, which cannot be the case; and iii) as the discussion *supra* provides, FRCP 59(e) applies to "a judgment", thus it applies to appealable interlocutory judgments as well as a final judgement of the case.

   Therefore, regarding "finality" of SMJ for the §7433 Claim, as SCOTUS suggests, "finality" can be like entering the "twilight zone". Since the 2/3/21 Order disposed of an issue of the §7433 Claim, it is best viewed as having met the Cohen Doctrine standard that provides, "[28 U.S.C.] Section 1292 allows appeals… from certain interlocutory orders… when they have a final and irreparable effect on the rights of the parties.", *Cohen v. Benefit Indus. Loan Corp.* (1949) 337 U.S. 541, 545. Here, the Court's SMJ decision regarding the §7433 Claim ("**§7433 SMJ Decision**") will have a final and irreparable effect on the Parties' rights. Additionally, the standard of *Catlin v. United States* (1945) 324 U.S. 229, 233 states that review is limited to, " 'final decisions' in the District Court. A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Here, the Court's §7433 SMJ Decision leaves nothing for the Court to do but execute the judgment.

   For these reasons the §7433 SMJ Decision is a "final decision" by the Court that is reviewable.

3

Plaintiff's Reply to (Dkt 31) IRS' Opposition to (Dkt 25) Plaintiff's Notice & Motion to Alter, Amend, Vacate (Dkt 22) Judgment re (Dkt 13) IRS' Notice & Motion to Dismiss (Dkt 1) Plaintiff's Complaint    Case No.: 20-cv-03512-VKD

use of Civ. L.R. 7-9 rather than FRCP 59(e) to the extent that review under Civ. L.R. 7-9 doesn't violate his rights.

   **3.   IRS' Civ. L.R. 7-9 Discussion Defrauds the Court:**

   **A.   <u>IRS Defrauds this Court Regarding *Kona Enters:*</u>**

   **i.   Misquote:** The IRS states, "A motion for reconsideration is an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.' *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).", Dkt 31, 2:9-11. As Hadsell has just done, when quoting text, in-line, from a source with an internal quote, the internal quote is set-off with single quote marks. And if the cite to the internal quotation is elided, one places "[Citation.]" in place of the cite. Here, the IRS defrauds[8] the Court by quoting *Kona Enters* as though they are the court's words. They are not. The words are from 12 Moore's Federal Practice - Civil § 59.30 ("**Moore**"). The prior sentence in Moore begins, "Courts have considerable discretion in determining whether to grant or deny a motion to alter or amend: Rule 59…". Thus, the quote regards FRCP 59, ***<u>not</u>*** Civ. L.R. 7-9. The next sentence is the one quoted, and it begins with a limitation on the prior sentence's "considerable discretion" by stating, "However, this discretion is not limitless:…". Thus, in context, the quote: i) has nothing to do Civ. L.R. 7-9, and ii) supports Hadsell's argument that review involves "twilight zone", mutually exclusive, levels of discretion that range from "considerable discretion" to avoid injustice, to "used sparingly" to conserve judicial resources.

   **ii.   Inapposite:** Final judgments are reviewable. ***<u>The</u>*** issue is whether an interlocutory order is reviewable. The *Kona Enters* case is a final-judgment case. Thus, *Kona Enters* is inapposite.

   **iii.   Conclusion:** Here, the IRS defrauds the Court because it: i) misquotes its source, ii) fails to note the quote pertains to FRCP 59 rather than Civ. L.R. 7-9, iii) fails to indicate the Court's range of discretion as to the different issues under analysis, and iv) fails to state that the case involves a different type of judgment than the one under consideration here. Good grief.

   **B.   <u>IRS Defrauds This Court Regarding Civ. L.R. 7-9:</u>**

---

[8] The difference between mislead and defraud is that for fraud, the tortfeasor intends to mislead. Additionally, fraud also requires reliance by the victim. Here, having been forewarned, the Court would not rely upon the misleading statements. However, since the IRS has committed each element on its part, and because defraud ascribes intent and mislead does not, fraud is the more appropriate term.

4

### i. The Rule's Structure:

1. Civ. L.R. 7-9 divides a Motion for Reconsideration ("**MOT 4 Recon**") into two motions: i) a motion for leave ("**MOT 4 Leave**") to file a MOT 4 Recon, and ii) if, and only if, leave is granted, filing a MOT 4 Recon.

2. This "two-motions" structure is accomplished as follows:

   a. Civ. L.R. 7-9(a) ("**§(a)**") requires the filing, _**and**_ granting, of the MOT 4 Leave, before a party may file the MOT 4 Recon. It also requires that the grounds for the _**MOT 4 Recon**_ must be among at least one of the three grounds listed in Civ. L.R. 7-9(b) ("**§(b)**"). The three grounds are:

   **A)** If a material change in fact or law occurs _**before**_ the interlocutory order;

   **B)** If a material change in fact or law occurs _**after**_ the interlocutory order;

   **C)** If the Court manifestly fails to consider material facts or law _**presented before**_ the interlocutory order.

   b. Section (b) provides the form and content of the _**MOT 4 Leave**_.

   c. Civ. L.R. 7-9(c) ("**§(c)**") is entitled "Prohibition Against Repetition of Argument". That's exactly what it does. Because the MOT 4 Recon is a two-motions process, that process limits _**all discussion**_ of any _**arguments previously presented**_ to the Court to only one of the motions: the _**MOT 4 Recon**_. Thus, §(a) limits all discussion of any arguments previously presented to the _**MOT 4 Recon**_. To avoid "Repetition of Argument", §(c) _**applies solely**_ to the MOT 4 Leave. It prohibits the _**MOT 4 Leave**_ from discussing any previously presented arguments. Section (c) states ("**§(c) Quote**", emphasis and color highlights added):

   > No motion for leave _**to file**_ a motion for reconsideration may repeat any oral or written argument made by the applying party in support of or in opposition to the interlocutory order which the party now seeks to have reconsidered.

### ii. IRS' Fraud Regarding Civ. L.R. 7-9:

1. The Court accepted Hadsell's motion to alter, vacate, or amend the 2/3/21 Order pursuant to FRCP 59(e) (Dkt 24) as a motion for reconsideration pursuant to Civ. L.R. 7-9(b)(3), Dkt 26, 1:20-28; 2:27-28. As discussed _supra_, §(a) provides that a _**MOT 4 Recon**_ can only be filed upon the Court's previously granting a _**MOT 4 Leave**_. Thus, the Court's acceptance of Hadsell's MOT 4 Recon pursuant to Civ. L.R. 7-9(b)(3) means it also granted Hadsell leave to file a MOT 4 Recon.

5

**2.** The IRS (Dkt 31, 2:12-15) quotes from §(c) ("**IRS Quote**") as follows:

> In addition, "[n]o motion for… for [sic] reconsideration may repeat any oral or written argument made by the applying party in support of or in opposition to the interlocutory order which the party now seeks to have reconsidered." Civ. L.R. 7-9(c).

**3.** In comparing the IRS Quote with the §(c) Quote, the IRS, ***purposefully***, elided the words, "leave to file a motion" to defraud this Court with the argument that §(c)'s prohibition against "Repetition of Argument" applies to Hadsell's MOT 4 Recon. It then compounds its fraud by attacking Hadsell's MOT 4 Recon as though it were a MOT 4 Leave, and, as so transmogrified, his motion violated §(c), Dkt 31, 3:2-3; 3:12-13; 3:21-22. N.b., transmogrification is the ***exact same tactic*** the IRS used to transmogrify Hadsell's valid, IRS–accepted, Credit Election Funds into a refund, and then applied law that only applies to refunds, to his Credit Election Funds.

**C.**   **IRS Defrauds this Court Regarding *Montebueno*:**

**i.** Just like the IRS did regarding Civ. L.R. 7-9, it attacks Hadsell's MOT 4 Recon as though it were a MOT 4 Leave when it quotes from *Montebueno Mktg. v. Del Monte Corp.-USA* (9th Cir. 2014) 570 F.App'x 675 as though it applies to this case. It does not. With respect to Civ. L.R. 7-9, *Montebueno* solely involves a MOT 4 Leave, not a MOT 4 Recon, *Id*., 676. If despite its completely different set facts (summary judgment, and MOT 4 Leave), *Montebueno* is somehow applicable by analogy, the IRS fails to make such an analogy. Absent such an analogy, the IRS purposefully misleads the Court that a quote from *Montebueno* holds precedential authority for this case—especially when *Montebueno*, as an unpublished case, is nonprecedential, USCS Ct App 9th Cir, Circuit R 36-3(a).

**4.**   **IRS Disobeys this Court's Orders—Again**

**A.** Hadsell apologizes for the following pedantry; however, allegations of disobeying court orders demand specificity.

**i.** The Court ordered the IRS to address certain issues in this case. Those issues will be listed, and the listing will indicate the issues addressed, and by their absence, those not addressed.

**ii.** The issues that the IRS did address will be discussed following this section.

**B.**   **Court's Orders:** The Court's 4/2/21 Order (Dkt 30, 1:26-2:7) ordered the IRS to address three issues:

**i.** "**Issue 1**": "the issues raised in Mr. Hadsell's [MOT 4 Recon, Dkt 24]…", Dkt 30,

6

Plaintiff's Reply to (Dkt 31) IRS' Opposition to (Dkt 25) Plaintiff's Notice & Motion to Alter, Amend, Vacate (Dkt 22) Judgment re (Dkt 13) IRS' Notice & Motion to Dismiss (Dkt 1) Plaintiff's Complaint   Case No.: 20-cv-03512-VKD

1:26-2:1:

     **1.**    The Introduction in Hadsell's motion (Dkt 24, deemed a MOT 4 Recon, Dkt 26, 1:21-23) summarizes the issues raised in his motion as follows (Dkt 24, 4:24-5:4):

          **a.**    "**Issue 1.1**": Different legal outcomes result from different sequences of facts;

          **b.**    "**Issue 1.2**": Hadsell's complaint was misstated;

          **c.**    "**Issue 1.3**": The words "Credit Election" have different meanings in the context of a Credit Election Decision vs. Credit Election Funds, ("**Issue 1.3.1**")—including the gargantuan benefits to the government from the irrevocability of Credit Election Decisions vs. the nearly nonexistent benefits to a taxpayer ("**Issue 1.3.2**"); and

          **d.**    "**Issue 1.4**": Pursuant to *Snyder & Assocs. Acquisitions LLC v. United States* (9th Cir. 2017) 859 F.3d 1152, a court order granting the IRS immunity pursuant to 28 U.S.C. §2680(c) ["**§2680(c)**"] must involve some limiting principle, otherwise, it transmogrifies, "§ 2680(c)'s expansive reach… [into] grant[ing] the IRS absolute immunity.", thereby violating §2680(c), *Snyder*, 1158.

     **ii.**    "**Issue 2**": "any authority regarding the circumstances under which… the IRS may be deemed to have irrevocably accepted a credit election ["**Issue 2.1**"], or how such acceptance might impact this Court's jurisdiction over Mr. Hadsell's claim under 26 U.S.C. § 7433 ["**Issue 2.2**"]…", Dkt 30, 2:2-4; and

     **iii.**    "**Issue 3**": "the significance, if any, of language in 26 U.S.C. § 6402(a) and 26 C.F.R. § 301.6402-3(a)(6) stating that the IRS may credit overpayments to other obligations 'within the applicable period of limitations.' ", Dkt 30, 2:4-7.

     **iv.**    Thus, the total issues to be addressed are 8 (1.1, 1.2, 1.3.1, 1.3.2, 1.4, 2.1, 2.2, and 3). [Rest of this page intentionally left blank to accommodate spacing for the table on the next page.]

7

Plaintiff's Reply to (Dkt 31) IRS' Opposition to (Dkt 25) Plaintiff's Notice & Motion to Alter, Amend, Vacate (Dkt 22) Judgment re (Dkt 13) IRS' Notice & Motion to Dismiss (Dkt 1) Plaintiff's Complaint    Case No.: 20-cv-03512-VKD

**C.    Orders Disobeyed:** Putting aside the caption, the footers, and the signature block, the IRS' Response to Hadsell's MOT 4 Recon is 878 words. Segmenting the words by topics addressed cannot be exact. But, a very close approximation, in the order presented, is as follows:

| Topic | Cite | Issue | Words |
|---|---|---|---|
| 1  Facts | 1:17-19 | | 53 |
| 2  Motion for Reconsideration Requirements and Standard of Review | 1:20-2:15 | | 323 |
| 3  Hadsell's Request for SMJ Reconsideration for §7433 Claim | 2:16-24 | | 138 |
| 4  Hadsell's Request for SMJ Reconsideration for FTCA Claim     Including Irrevocability of Credit Election | 3:1-7 | 1.1; 1.3.1; 2.1 | 118 |
| 5  28 U.S.C. §2860(c) as Related to Tax Assessment and Collection | 3:8-13 | 1.1; 2.1 | 102 |
| 6  Attempt to Distinguish *Snyder* by a Factual Difference | 3:14-19 | | 94 |
| 7  Concluding Remarks | 3:20-23 | | 50 |
| Total Words | | | 878 |

**i.**    By charitably attributing a discussion that could be said to involve irrevocability of a Credit Election Decision as addressing Issues 1.1 and 2.1, lines 4 and 5 in the table *supra* show that the IRS "addressed", three of the eight issues the Court ordered the IRS to address. And even counting the 47 words arguing about the irrelevant requirements for a MOT 4 Leave, the IRS provided the Court with 220 words. By comparison, the Court used 102 words merely to list the issues to be addressed.

**ii.**    The Court has kindly noted that Hadsell "is understandably frustrated" by the IRS' behavior in this case. Unfortunately, by failing to address over half of the issues (5 of 8, and arguably, failed to substantively addressed any of them), the Court perhaps shares some of the same frustration.

**5.    Credit Election Irrevocability:**

**A.**    The IRS states, (Dkt 31, 3:4-6, "**IRS Irrevocability Quote**", emphasis and color highlight added):

> [Hadsell argues] that at some point after he made the credit election on his income tax forms[9], the IRS was bound by that election and could not later *offset* those amounts against *other tax liabilities* under 26 U.S.C. § 6402. No court has ever made such a *finding*.

**B.**    The Court asked the IRS for "any authority… [where] the IRS may be deemed to have irrevocably accepted a credit election...", Dkt 30, 2:2-3.

**i.    "Authority" Definition:** Black's Law Dictionary (11th ed. 2019) defines authority as, "A source, such as a statute, case, or treatise, cited in support of a legal argument."

---

[9] Hadsell also made numerous Credit Election Decisions in letters to the IRS with payments. It is indisputable that the IRS accepted Hadsell's Credit Election Decisions because Hadsell's letters made acceptance of the payments conditional upon accepting Hadsell's Credit Election Decisions.

8

Plaintiff's Reply to (Dkt 31) IRS' Opposition to (Dkt 25) Plaintiff's Notice & Motion to Alter, Amend, Vacate (Dkt 22) Judgment re (Dkt 13) IRS' Notice & Motion to Dismiss (Dkt 1) Plaintiff's Complaint            Case No.: 20-cv-03512-VKD

      **ii.**    **"Finding" Definition:** Black's Law Dictionary (11th ed. 2019) states that "finding" is short for "finding of fact", and is defined as, "A determination by a judge, jury, or administrative agency of a fact supported by the evidence in the record, usu. presented at the trial or hearing…".

      **iii.**    Thus, a finding is not an authority. Indeed, as *Spector v. United States* (9th Cir. 1952) 193 F.2d 1002, 1006 instructs, a finding applies only to the parties to that action, "[N]o principle of stare decisis or res judicata makes a finding of fact applicable to persons not parties to the action in which the finding is made."

      **iv.**    **IRS Either Disobeyed the Court's Order or Defrauded the Court:**

        **1.**    As discussed *infra*:

          **a.**    If, in the IRS Irrevocability Quote, the IRS means the words, "offset… other tax liabilities", and "finding" literally, then it disobeyed this Court's orders.

          **b.**    If it means those words, within the context of irrevocability, to argue that there is no authority for the proposition that the IRS' acceptance of a Credit Election Decision is irrevocable, then it defrauded the Court.

        **2.**    **IRS Disobeyed the Court's Order:**

          **a.**    **Finding vs. Authority:** Because the Court asked the IRS for authorities, and a finding is not an authority, the IRS disobeyed the Court's order by discussing findings rather than authorities.

          **b.**    **Offsets vs. Irrevocability:**

            **A)**    No one argues that Credit Election Funds do not apply to tax liabilities—indeed, that's their raison d'ê·tre! Thus, by discussing offsets to tax liabilities rather than irrevocability, the IRS disobeyed the Court's order.

        **3.**    **IRS Defrauded the Court:**

          **a.**    There is plenty of authority that once the IRS accepts a taxpayer's Credit Election Decision, neither the IRS nor the taxpayer can revoke the election:

            **A)**    As Hadsell has provided before, *Martin Marietta Corp. v. U. S.* (Ct. Cl. 1978) 572 F.2d 839, 842 (color highlight added) states, "If a taxpayer… elects to credit an overpayment to its succeeding taxable year's estimated tax liability, ==that election is irrevocable and binding upon both the==

9

Plaintiff's Reply to (Dkt 31) IRS' Opposition to (Dkt 25) Plaintiff's Notice & Motion to Alter, Amend, Vacate (Dkt 22) Judgment re (Dkt 13) IRS' Notice & Motion to Dismiss (Dkt 1) Plaintiff's Complaint    Case No.: 20-cv-03512-VKD

taxpayer and the Internal Revenue Service."

   **B)** As Hadsell also provided, Shepardizing *Martin Marietta* reveals 27 citations—16 federal cases, and 11 IRS Agency Materials.

    **i)** Among the court cases one finds: *In re Block* (N.D.Tex. 1992) 141 B.R. 609 (color highlight added): "Sections 6402(b) and 6513(d) of 26 U.S.C. allow a taxpayer to credit all or part of any overpayments to the taxpayer's estimated tax liability for the succeeding taxable year. Such election, however, is irrevocable and binding upon the taxpayer and the Internal Revenue Service."

    **ii)** Among the IRS Agency Materials one finds:

     **1)** IRS-Chief Couns Adv Mem 201103020 (10/14/10), p. 3 (color highlights added):

"Courts have generally held that a credit election is irrevocable and that the election binds both the taxpayer and the IRS. *Georges v. United States*, 916 F.2d 1520, 1520-21 (11th Cir. 1990); *Martin Marietta Corp. v. United States*, 572 F.2d 839, 841-42 (Ct. Cl. 1978); *Starr v. Comm'r*, 267 F.2d 148, 151 (7th Cir. 1959)."

     **2)** IRS-Chief Couns Adv Mem 201024040 (2/4/10), p. 3 (color highlights added):

A taxpayer's election to credit an overpayment to estimated taxes is irrevocable and binding on both the taxpayer and the Service. See *Martin Marietta Corp. v. United States*, 216 Ct. Cl. 47 (1978); *Fisher v. United States*, 61 F. Supp. 2d 621 (E.D. Mich. 1999) [Citations.]

  **b.** **If:**

   **A)** the IRS is discussing *__offsets__* to Credit Election Funds *__by tax liabilities__* (which is exactly what Credit Election Funds are supposed to be applied against) as a substitute for the IRS revoking Credit Election Decisions (viz., converting Credit Election Funds into Refunds, and then offsetting the Refunds by other than tax liabilities), and;

   **B)** the IRS is discussing *__finding__* as a substitute for *__authority__*;

   **C)** in order to argue that there are no authorities for the proposition that Credit Election Decisions are irrevocable by both the taxpayer and the IRS;

  **c.** **Then:**

   **A)** The IRS defrauded the Court.

**6.** **Within the Applicable Statute of Limitations:**

10

Plaintiff's Reply to (Dkt 31) IRS' Opposition to (Dkt 25) Plaintiff's Notice & Motion to Alter, Amend, Vacate (Dkt 22) Judgment re (Dkt 13) IRS' Notice & Motion to Dismiss (Dkt 1) Plaintiff's Complaint   Case No.: 20-cv-03512-VKD

    **A.**    The Court inquired about, "the significance, if any, of language in 26 U.S.C. § 6402(a) and 26 C.F.R. § 301.6402-3(a)(6) stating that the IRS may credit overpayments to other obligations 'within the applicable period of limitations.' ", Dkt 30, 2:4-7.

    **B.**    From 26 U.S.C. §6402(a), the language's context is:

> In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax…

        **i.**    The language means that the IRS cannot apply an overpayment to a tax liability that is time barred, *Brady v. United States* (D.Mass. 1927) 24 F.2d 205; *Lyeth v. Hoey* (2d Cir. 1940) 112 F.2d 4, 8 ("The [IRS'] right of recoupment or credit is precluded by statute and the [taxpayer] is entitled to recover the amount of his overpayment without abatement."); *Wood v. United States* (S.D.N.Y. 1953) 121 F.Supp. 769.

**7.**    **Conclusion:**

    **A.**    It is commendable that the Court extended every effort to afford the IRS every opportunity to be heard because the Court, "prefers to address th[]e issues on the merits…".

    **B.**    It is a travesty that the IRS wasted its opportunity: i) by providing the Court with less than 200 words that, at best, obliquely, addressed the issues that the Court specifically ordered the IRS to address, ii) by disobeying the Court's orders—yet again, and iii) by defrauding the court.

    **C.**    Therefore, for the reasons, and the facts, law, and argument provided in both Hadsell's MOT 4 Recon (Dkt 24), and *supra*, Hadsell respectfully requests that the Court GRANT Hadsell's MOT 4 Recon.

Dated: April 20, 2021                                                                  Respectfully submitted,

                                                                                                                                     Christopher Hadsell, Plaintiff

11

Plaintiff's Reply to (Dkt 31) IRS' Opposition to (Dkt 25) Plaintiff's Notice & Motion to Alter, Amend, Vacate (Dkt 22) Judgment re (Dkt 13) IRS' Notice & Motion to Dismiss (Dkt 1) Plaintiff's Complaint    Case No.: 20-cv-03512-VKD