UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHRISTOPHER HADSELL,<br><br>    Plaintiff,<br><br>     v.<br><br>UNITED STATES OF AMERICA, THE DEPARTMENT OF TREASURY BY ITS AGENCY, THE INTERNAL REVENUE SERVICE,<br><br>    Defendant. | Case No. 20-cv-03512-VKD<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 41 |

Plaintiff Christopher Hadsell claims that he made valid credit elections to have overpayments of his personal income taxes applied to the following year's tax liability, but the Internal Revenue Service ("IRS") improperly treated his credit elections as refunds subject to offset. He now moves for summary judgment on his sole remaining claim for violation of 26 U.S.C. § 7433.[1] The United States opposes the motion. With leave of court, the United States submitted a supplemental brief on legal issues bearing on the present motion,[2] and Mr. Hadsell filed a response. Dkt. Nos. 53, 54. Upon consideration of the moving and responding papers, as well as the oral arguments presented, the Court denies Mr. Hadsell's motion for summary

---

[1] The Court granted the United States's prior motion to dismiss Mr. Hadsell's claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80, for lack of subject matter jurisdiction. Dkt. Nos. 22, 35.

[2] Although the United States's supplemental brief was filed by a different attorney at the Department of Justice, the brief was filed with the Court's authorization. Dkt. No. 50. The filing attorney should have submitted a notice of appearance pursuant to Civil L.R. 5-1(c), but the failure to do so does not in any way implicate the Court's subject matter jurisdiction over this matter or its personal jurisdiction over the defendant.

judgment.[3]

## I. BACKGROUND

The facts presented on Mr. Hadsell's motion for summary judgment are essentially the same as those presented on the United States's prior motion to dismiss. Except as otherwise noted, those facts are largely undisputed and are recited below:

According to the complaint, Mr. Hadsell timely filed an income tax return for the tax year 2016 and reported an overpayment of $9,547, as to which he made a credit election and directed the IRS to apply it to his tax liability for the 2017 tax year. *See* Dkt. No. 1 at 15, 19;[4] Dkt. No. 41 at 9, 59.[5] According to Mr. Hadsell's allegations, the IRS did not notify him until July 9, 2018 that it did not apply the credit election made in his 2016 tax return and instead treated his overpayment as a refund subject to offset. Dkt. No. 1 at 22, 40; *see also* Dkt. No. 41 at 22. Mr. Hadsell says that this notice came well over a year after he filed his 2016 tax return and months after he contends that his $9,547 credit election should have been deemed paid against his 2017 tax liabilities. Dkt. No. 1 at 15; Dkt. No. 41 at 22.

Further, Mr. Hadsell alleges that by the time the IRS notified him that it had not applied his $9,547 credit election, he had already filed his 2017 tax return. Dkt. No. 1 at 120; Dkt. No. 41 at 22. In preparing his 2017 tax return, Mr. Hadsell says he included the $9,547 credit against his 2017 tax liabilities. Dkt. No. 1 at 15; Dkt. No. 41 at 44, 48. Additionally, Mr. Hadsell says that he uses a tax preparation software program to calculate his taxes and was surprised to find that the program indicated he owed $2,448 under the Patient Protection and Affordable Care Act ("ACA"). Dkt. No. 1 at 23; Dkt. No. 41 at 51. Although he believed no such tax was owed for the year 2017, Mr. Hadsell claims that he nonetheless erred on the side of caution in favor of overpaying, rather than underpaying, his taxes and therefore paid the $2,448 healthcare tax. Dkt.

---

[3] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 5, 15.

[4] Mr. Hadsell previously submitted a declaration with respect to certain matters asserted in his complaint. Dkt. No. 4.

[5] All pin citations refer to the ECF page number that appears in the header of the cited document.

1  No. 1 at 23; Dkt. No. 44 at 51-52.  Even so, Mr. Hadsell says that he subsequently received a July

2  16, 2018 notice from the IRS advising that he owed $2,448 in healthcare tax for that same year.

3  Dkt. No. 1 at 23, 47; Dkt. No. 41 at 52.  Mr. Hadsell further alleges that on August 6, 2018, he

4  responded to the IRS by disputing that he owed $2,448, but to stop further collection efforts, he

5  enclosed his payment of the $2,448, with a request that the IRS correct the issue and apply the

6  enclosed payment toward his tax liabilities for the year 2018.  Dkt. No. 1 at 23, 51-52; Dkt. No. 41

7  at 52.  Records appended to the complaint indicate that the IRS subsequently determined that Mr.

8  Hadsell had overpaid $2,448, but diverted a portion of that sum to "an amount owed for 2017" and

9  refunded the remainder to Mr. Hadsell.  Dkt. No. 1 at 24, 95, 97.

10  Mr. Hadsell contends that any deficiencies in his 2017 and 2018 tax returns are the result

11  of the IRS's failure to honor his 2016 credit election and his August 6, 2018 letter conditioning his

12  $2,448 healthcare tax payment on application of that sum to his 2018 tax liabilities.  *See* Dkt. No.

13  1 at 24.  Asserting that the IRS's failure to apply his credit elections violates 26 U.S.C. § 7433,

14  Mr. Hadsell seeks $13,253.13 in damages, plus interest, fees and costs.  The United States

15  maintains that the subject offsets were mandated by 26 U.S.C. § 6402(c) for past-due child support

16  payments.

17  Mr. Hadsell now moves for summary judgment, arguing that the United States had no

18  basis under 26 U.S.C. § 6402(c) to offset any of his credit election funds, and that the offsets in

19  question were made too late in any event.  For the reasons discussed below, the Court denies Mr.

20  Hadsell's motion for summary judgment.

21  **II.   LEGAL STANDARD**

22  A motion for summary judgment should be granted if there is no genuine issue of material

23  fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a);

24  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  The moving party bears the initial

25  burden of informing the court of the basis for the motion, and identifying portions of the

26  pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the

27  absence of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In

28  order to meet its burden, "the moving party must either produce evidence negating an essential

3

element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets his initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. *See Nissan Fire & Marine Ins. Co., Ltd.*, 210 F.3d at 1102. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. *See id.* A genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248-49.

## III.   DISCUSSION

A taxpayer may bring a civil action to recover damages caused by the IRS's disregard of any provision of Title 26 of the Internal Revenue Code in connection with the collection of federal taxes:

> If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the [IRS] recklessly or intentionally, or by reason of negligence, disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States. Except as provided in section 7432, such civil action shall be the exclusive remedy for recovering damages resulting from such actions.

26 U.S.C. § 7433(a). Thus, to establish liability under § 7433, a plaintiff must prove (1) the IRS recklessly, intentionally, or negligently disregarded part of Title 26 in connection with the collection of the plaintiff's federal tax liabilities; and (2) the plaintiff's resulting damages. The statute limits damages to the lesser of $1,000,000 for intentional and reckless violations and $100,000 for negligent violations; or the sum of actual, direct economic damages sustained by the plaintiff as a proximate result of the IRS's conduct and the costs of the action. *Id.* § 7433(b). Before bringing any such action, a plaintiff must exhaust his administrative remedies available within the IRS. *Id.* § 7433(d)(1).

In this case, Mr. Hadsell bases his § 7433 claim on alleged negligence by the IRS. *See*

4

Dkt. No. 41 at 17. He contends that the IRS violated 26 U.S.C. § 6402, which addresses the Secretary of the Treasury's authority to make credits or refunds, subject to offsets for certain kinds of tax and non-tax debts:

> (**a**) **General rule**.—In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c), (d), (e), and (f), refund any balance to such person.

26 U.S.C. § 6402(a). At issue are mandatory offsets the United States says it made for past-due child support pursuant to § 6402(c).[6] Mr. Hadsell contends that there was no basis for the United States to make such offsets.

With respect to evidentiary matters, neither side has made a particularly compelling showing. Mr. Hadsell argues that in its answer (Dkt. No. 36), the IRS admits to allegations in paragraph 12 and paragraph 14 of his complaint that the IRS accepted his credit elections and that the alleged wrongful acts were committed by IRS employees, as well allegations concerning his claimed damages. *See* Dkt. No. 1, ¶¶ 12, 14.B.ii; Dkt. No. 41 at 9, 10. However, in the cited portions of its answer, the IRS admitted only that the acts listed in paragraph 12 of the complaint "related to [Mr. Hadsell's] *filing*" of income tax returns and related documents are accurate and

---

[6] 26 U.S.C. § 6402(c) provides:

> (**c**) **Offset of past-due support against overpayments**.—The amount of any overpayment to be refunded to the person making the overpayment shall be reduced by the amount of any past-due support (as defined in section 464(c) of the Social Security Act) owed by that person of which the Secretary has been notified by a State in accordance with section 464 of such Act. The Secretary shall remit the amount by which the overpayment is so reduced to the State collecting such support and notify the person making the overpayment that so much of the overpayment as was necessary to satisfy his obligation for past-due support has been paid to the State. The Secretary shall apply a reduction under this subsection first to an amount certified by the State as past due support under section 464 of the Social Security Act before any other reductions allowed by law. This subsection shall be applied to an overpayment prior to its being credited to a person's future liability for an internal revenue tax.

that the complaint "contains allegations against IRS employees." Dkt. No. 36 at 2:15-16, 3:1 (emphasis added). The IRS otherwise denies that it applied the credit elections to Mr. Hadsell's 2017 income tax liabilities and denies that the alleged actions are improper. *Id.* at 2:15-17, 3:1-2. Thus, Mr. Hadsell's contentions regarding the scope and nature of the United States's purported admissions are not accurate.

For its part, the United States relies entirely on documents appended to the previously submitted declaration of IRS attorney Heather Wolfe (Dkt. No. 18-2), and argues that it never accepted Mr. Hadsell's credit elections and instead properly treated the sums as a refund subject to offset. *See* Dkt. No. 43 at 2-3. Mr. Hadsell disputes the dates and sums presented in the United States's opposition. The overarching issue, however, is an evidentiary one. The United States previously relied on the same Wolfe declaration in its prior motion to dismiss the complaint (Dkt. No. 13). In connection with that motion to dismiss, Mr. Hadsell raised several evidentiary objections based on authentication, relevance and hearsay, and renews his arguments concerning the admissibility of the Wolfe declaration and exhibits. Dkt. No. 44 at 2, 5. The United States did not, and still has not, addressed any of those objections.[7] Moreover, at most, Ms. Wolfe attests that she printed the appended documents from databases she uses in the course of her work, but does not explain the substance or context of the appended documents. The United States has not provided a sufficient evidentiary basis for the Court to consider Ms. Wolfe's declaration or the appended exhibits on the present motion for summary judgment.

In any event, as noted above the material facts are largely undisputed. Thus, resolution of the present motion depends on whether Mr. Hadsell has met his burden in establishing that he is entitled to judgment as a matter of law. For the reasons discussed below, the Court concludes that he has not met that burden.

Mr. Hadsell's arguments are two-fold. First, he argues that there is no evidence that the United States received proper notice from the State of California certifying any amount of past-due support he reportedly owes, as he says is required by § 6402(c). Dkt. No. 41 at 11-13, 16-17.

---

[7] The Court resolved the prior motion to dismiss without consideration of the Wolfe declaration. *See* Dkt. No. 22 at 4.

6

1    Indeed, he maintains that even if the IRS were to produce such documentation, any such notice
2    would be invalid as a matter of law, in view of the status and nature of his child custody and
3    support. *Id.* at 11-13.  Insofar as Mr. Hadsell's arguments essentially challenge the validity of
4    offsets made under § 6402(c), his remedy is to raise such a challenge with the relevant agency, not
5    the IRS. *See* 26 U.S.C. § 6402(g) ("No court of the United States shall have jurisdiction to hear
6    any action, whether legal or equitable, brought to restrain or review a reduction authorized by
7    subsection (c), (d), (e), or (f). . . . This subsection does not preclude any legal, equitable, or
8    administrative action against the Federal agency or State to which the amount of such reduction
9    was paid or any such action against the Commissioner of Social Security which is otherwise
10   available with respect to recoveries of overpayments of benefits under section 204 of the Social
11   Security Act."); *Ivy v. Comm'r of the Internal Revenue Serv.*, 197 F. Supp. 3d 139, 143 (D.D.C.
12   2016), *aff'd* 877 F.3d 1048 (D.C. Cir. 2017) (stating that for offsets made to pay outstanding
13   student loan debts, the "plaintiff's remedy was to challenge the Department of Education's action,
14   not that of the IRS.").  Any findings regarding the status and nature of his child custody and
15   support are beyond the scope of what this Court is permitted to consider in evaluating his § 7433
16   claim.  Moreover, although Mr. Hadsell contends that it is not his burden to prove a negative, he
17   has not presented evidence showing that the State of California did not send a properly certified
18   notice of overdue child support obligations to the United States; and, at the motion hearing, he
19   acknowledged that he has not conducted discovery on this particular issue.  Dkt. No. 48 at 9:2-17.
20       Mr. Hadsell's second argument is that the offsets at issue are untimely and were made at a
21   time when his credit elections were irrevocable and binding.  Dkt. No. 41 at 9-11 20-22.  The
22   parties do not dispute that the IRS is free to allow or reject a taxpayer's claim to credit an
23   overpayment against the following year's tax liabilities.  Nor does there appear to be any
24   disagreement that once the IRS allows a credit election, that credit election is binding on both the
25   taxpayer and the IRS.  *See Martin Marietta Corp. v. United States*, 572 F.2d 839, 842 (Fed. Cl.
26   1978) ("If a taxpayer, such as plaintiff, elects to credit an overpayment to its succeeding taxable
27   year's estimated tax liability, that election is irrevocable and binding upon both the taxpayer and
28   the Internal Revenue Service.").  Rather, the parties' key dispute is *when* the United States

7

properly may offset an overpayment against a non-tax debt owed by the taxpayer. Mr. Hadsell contends that with respect to his 2016 credit election, at the very least, any offset should have been made before April 2018 when he filed his 2017 tax return. The United States contends that there is no specific legal limitation on the IRS's ability to effect an offset, but that depending on the circumstances of a particular case, provisions of the Internal Revenue Code and related regulations essentially give the IRS two years from the date of payment of a tax or three years from the date a return is filed in which to decide whether or not to allow a credit election. Dkt. No. 43 at 4; Dkt. No. 53 at 1-3, 4.[8]

As noted above, in the case of any tax overpayment the Secretary (through the Commissioner of the IRS) "*within the applicable period of limitations* may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall," subject to certain offsets, "refund any balance to such person." 26 U.S.C. § 6402(a) (emphasis added); *see also* 26 C.F.R. § 301.6402-1 (same). "That is, the IRS 'shall' refund any overpayment not otherwise credited, but the IRS 'may credit' an overpayment to another liability." *Weber v. Comm'r of Internal Revenue*, 138 T.C. 348, 356 (T.C. 2012). Additionally, the Secretary has authority to "prescribe regulations providing for the crediting against the estimated income tax for any taxable year of the amount determined by the taxpayer or the [IRS] to be an overpayment of the income tax for a preceding taxable year." 26 U.S.C. § 6402(b). A taxpayer who reports an overpayment of tax on his return may request that the sum be refunded or, alternatively, may make a credit election to have the overpayment applied to his estimated income tax for the following tax year. 26 U.S.C. § 6402; 26 C.F.R. § 301.6402-2, 3(a)(5). However, "*[n]otwithstanding*" a taxpayer's credit election under "paragraph (a)(5) of this section, the Internal Revenue Service, *within the applicable period of limitations*, may credit any overpayment of individual . . . income

---

[8] The United States also contends that the subject offsets are made by the Bureau of Fiscal Service, not the IRS, and that this Court therefore does not have jurisdiction over this matter. Dkt. No. 43 at 6. As the United States indicates that such arguments will be presented more fully in its own affirmative motion for summary judgment, the Court does not address those jurisdictional arguments at this time.

tax, including interest thereon, against" tax and non-tax debts and liabilities in the following order: (1) any outstanding tax liability; (2) past-due support assigned to a State; (3) past-due and legally enforceable debts owed to federal agencies; and (4) past-due support not assigned to a State. *Id*. § 301.6402-3(a)(6) (emphasis added). "Only the balance, if any, of the overpayment remaining after credits described in this paragraph (a)(6) shall be treated in the manner so elected." *Id*.

Mr. Hadsell argues that § 6402, when read together with other sections of the Internal Revenue Code—namely, § 6513(b)(2) and § 6513(d)—means that the IRS must either accept or reject a taxpayer's credit election by the time the taxpayer files his return for the succeeding tax year. With respect to prepaid income tax generally, section 6513(b)(2) provides that "[a]ny amount paid as estimated income tax for any taxable year shall be deemed to have been paid on the last day prescribed for filing the return under section 6012 for such taxable year (determined without regard to any extension of time for filing such return)." 26 U.S.C. § 6513(b)(2).[9] With respect to an overpayment of income tax credited to estimated taxes, § 6513(d) provides:

> *If any overpayment of income tax is, in accordance with section 6402(b), claimed as a credit against estimated tax for the succeeding taxable year, such amount shall be considered as a payment of the income tax for the succeeding taxable year* (whether or not claimed as a credit in the return of estimated tax for such succeeding taxable year), and no claim for credit or refund of such overpayment shall be allowed for the taxable year in which the overpayment arises.

*Id*. § 6513(d) (emphasis added). Mr. Hadsell argues that by operation of § 6513(d), the overpayment he reported in his 2016 tax return was deemed credited against his 2017 tax liabilities, at the latest, by the April 2018 deadline when his 2017 tax return was filed.[10] Mr. Hadsell further suggests that it was reasonable for him to assume that his credit election had been

---

[9] The referenced section 6012 of the Internal Revenue Code identifies persons required to file income tax returns. *See* 26 U.S.C. § 6012.

[10] Mr. Hadsell suggests that the Court already made findings to that effect in its prior order on the United States's motion to dismiss. *See* Dkt. No. 41 at 10; Dkt. No. 22 at 8:21-25. He is incorrect. In context, the cited portion of the Court's order addressed what the Court found to be insufficient briefing and argument by the parties, including on issues "regarding the circumstances under which, as Mr. Hadsell contends, the IRS may be deemed to have irrevocably accepted a credit election[.]" Dkt. No. 22 at 8:14-15.

9

allowed, citing § 6611(e)(1), which essentially provides that if any overpayment of taxes is refunded within 45 days after the return is filed, then no interest is allowed. *See* 26 U.S.C. § 6611(e)(1). Mr. Hadsell claims that after he filed his 2016 tax return, he received neither a refund within 45 days (without interest) nor a refund after 45 days (with interest), and therefore the IRS must have accepted his 2016 credit election.

The United States contends that § 6513(d) does not itself impose any time limits for the IRS to decide whether or not to accept a taxpayer's credit election. Dkt. No. 53 at 6. But, even assuming that the statute were construed to automatically deem a credit election paid against the succeeding year's taxes, the United States correctly notes that § 6513(d) states that a credit election "shall be considered as a payment of the income tax for the succeeding taxable year" where an "*overpayment* of income tax is, *in accordance with section 6402(b)*, claimed as a credit against estimated tax for the succeeding taxable year." 26 U.S.C. § 6513(d) (emphasis added). Section 6402(b), as discussed above, is the provision authorizing the Secretary to "prescribe regulations providing for the crediting against the estimated income tax for any taxable year of the amount determined by the taxpayer or the [IRS] to be an overpayment of the income tax for a preceding taxable year." 26 U.S.C. § 6402(b). Thus, the United States contends that, at the very least, a valid credit election contemplated by § 6513(d) requires (1) an assessment to determine whether a taxpayer has, in fact, made an overpayment of taxes for the year in question; and (2) adherence to the Secretary's regulations for crediting overpayments to future estimated taxes.

No one disputes that a taxpayer's reported overpayment is subject to an assessment, or that when a taxpayer files a return, the IRS has three years from the filing of the return to make an assessment. 26 U.S.C. § 6501(a). This is consistent with the United States's contention that language in § 6402(a) providing that "the Secretary, *within the applicable period of limitations*, may credit the amount of such overpayment," is commensurate with the three-year assessment period. *See* Dkt. No. 53 at 3, 4; *see also* Dkt. No. 54 at 6 ("As provided by Hadsell, the 'applicable period of limitations' refers solely to prohibit IRS from assessing a tax liability beyond the three-year statute of limitations period when IRS can assess a tax liability[.]"). Additionally, the United States correctly points out that regulations promulgated under § 6402(b) provide that

notwithstanding a taxpayer's credit election, the IRS "within the applicable period of limitations" may credit an overpayment of income tax against tax and non-tax debts in order of priority, including past-due support assigned to a State and past-due support not assigned to a State. 26 C.F.R. § 301.6402-3(a)(6). "Only the balance, if any, of the overpayment remaining after credits described in this paragraph (a)(6) shall be treated in the manner so elected." *Id*. Regulations pertaining to offsets for support payments, in turn, provide certain additional procedural requirements. *See, e.g.,* 26 C.F.R. § 301-6402-5(c) (requiring a State to provide by October 1 of each year notice of liability for past-due support, and requiring the Secretary of Health & Human Services to provide by December 1 of each year notice to the IRS of State notifications for past-due support). In sum, the United States contends that § 6513 does not supply an absolute deadline for the IRS to act on a taxpayer's credit election or provide support for requiring the IRS to act on a credit election by the filing deadline for the succeeding year's tax return. *See* Dkt. No. 53 at 6.

Mr. Hadsell maintains that § 6402(a) has nothing to do with temporal limitations regarding a credit election. He contends that it is § 6402(b) that is key, arguing that § 6402(b) authorizes either the taxpayer or the IRS to "determine the amount of a tax overpayment *to be applied* to estimated taxes[.]" Dkt. No. 54 at 4 (emphasis added). As discussed above, however, the plain terms of § 6402(b) simply authorize the Secretary to promulgate regulations for crediting an overpayment against estimated income tax. Section 6402(b) does not, as Mr. Hadsell seems to suggest, give a taxpayer the authority to determine what amount of an overpayment will be credited against estimated taxes. Rather, § 6402(b) simply refers to the amount determined by the taxpayer or the IRS "to be an overpayment" for the preceding taxable year. Mr. Hadsell's proffered interpretation of § 6402 would essentially read the phrase "in accordance with section 6402(b)" out of § 6513(d). "Such a result is one [courts] must avoid, as it is not within the judicial province to read out of the statute the requirement of its words." *Tides v. The Boeing Co.*, 644 F.3d 809, 816 (9th Cir. 2011) (internal quotations and citations omitted); *see also U.S. v. Felt & Tarrant Mfg. Co.*, 283 U.S. 269, 273 (1931). Moreover, Mr. Hadsell's proffered statutory interpretation would, in effect, allow a taxpayer to bypass the Secretary's regulations promulgated under § 6402(b) simply by making a credit election. He has not provided any authority to support

a conclusion that that is what was intended by the relevant statutes and regulations. The Court therefore is not persuaded that § 6402, together with § 6513(b)(2), § 6513(d), and § 6611(e)(1), properly is construed to mean that a taxpayer's credit election becomes irrevocable and binding on the deadline for filing the succeeding year's taxes. Accordingly, Mr. Hadsell's motion for summary judgment is denied.

## IV.  CONCLUSION

Based on the foregoing, Mr. Hadsell's motion for summary judgment is denied.

**IT IS SO ORDERED.**

Dated: November 19, 2021

VIRGINIA K. DEMARCHI
United States Magistrate Judge