Christopher Hadsell
Plaintiff
9000 Crow Canyon Rd., S-399
Danville, CA 94506
Email: CJHadsellLaw@gmail.com
Tel: (925) 482-6502

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Christopher Hadsell, | Case No.:   5:20-cv-03512-VKD |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO IRS' MOTION FOR SUMMARY JUDGMENT (DKT 55)** |
| vs. | |
| United States of America, the Department of Treasury by its agency, the Internal Revenue Service | **Date:**      12/14/21<br>**Time:**      10:00 a.m.<br>**Location:**  Courtroom 2, 5th Floor |
| Defendant. | **Judge:**     Hon. Virginia K. DeMarchi |

1.    Plaintiff ("**Hadsell**") hereby opposes Defendant's ("**IRS**") United States' Motion for Summary Judgment ("**IRS MOT Summ JDMT**", Dkt 55).

# IRS MOT SUMM JDMT FAILS BECAUSE IRS' THEORY OF THE CASE REQUIRES AN IMPOSSIBILITY

2.    **California's Impossibility to Provide Required Notification and Certification[1]**

A.    As detailed in Dkt 41, 11:15-12:6, it's impossible for California:

i.    to notify the Secretary of any valid, court-ordered, past-due support; or

ii.    to certify an amount of past-due support to which California is entitled; because

iii.    even if there were past-due support owed (which there is not), ***there is no assignment*** of any past-due support to California as ***required*** by 42 U.S.C. §664(a)(1), "**§664(a)(1)**"[2].

---

[1] N.b., this is not a rehash of prior argument.

[2] As §664(a)(1) requires, pursuant to 42 U.S.C. §608(a)(3) ["**§608(a)(3)**"], "[California]… ***shall require***, as a condition of paying assistance to a family under the State program funded under this part, that a member of the family assign to the State any right the family member may have (on behalf of the family member or of any other person for whom the family member has applied for or is receiving such

**B.**   This "assignment" is no minor detail. Although IRS cannot offset Credit Election Funds, it's the entire legal basis for IRS' actions to offset Refund Funds because ***an assignment of past-due support to California can only occur*** if: i) California has paid benefits to Hadsell's family; ii) a Hadsell family member has assigned past-due payments to California; ***AND*** (not ***IF***) iii) Hadsell has valid, court-ordered, past-due support outstanding.

   **i.**   Not only does Hadsell ***not*** have any valid, court-ordered, past-due support (which is beyond the scope of these proceedings), but even if he did, what ***is*** within the requirements of federal law, and therefore ***is*** within the scope of these proceedings, is that it's indisputable that no benefits have ever been paid to Hadsell's family (Dkt 41, 12:1-3). Therefore, no assignment of past-due support ***has***, nor ***can it be***, assigned to California because spousal support has ceased, and all of Hadsell's children have reached their majority—thereby ending child support. But even if an assignment had been made, it would be limited to the "amount of assistance so paid" to Hadsell's family—which, undisputedly, is $0.

   **ii.**   Therefore, there is ***no circumstance*** under which IRS is "authorized" to take ***any amount*** from Hadsell pursuant to 26 U.S.C. §6402(c)[3]. This is important because the Court quotes §6402(g) (Dkt 56, 7:3-14) to argue that the Court lacks jurisdiction, "to hear any action… to restrain or review a reduction ***authorized*** by subsection (c)…" (emphasis added). But, with all due respect, the Court erred when it failed to also note that §6402(g) ***only*** applies when IRS is "***authorized*** by subsection (c)" to act. But, IRS ***can never be authorized*** to act under §6402(c) because California can never meet the elements of §664(a)(1) and §608(a)(3) ***required by §6402(c)*** to "authorize[]" IRS to act.

   **C.**   Because the IRS MOT Summ JDMT requires an impossibility to succeed, it must fail.

   **D.**   Although an impossibility can't be legitimately viewed as a genuinely disputed material fact, even if the Court were to somehow overlook the impossibility, at the very least, there would be a genuine dispute of a fact at the very heart of IRS' motion; therefore, the motion must fail, Fed. Rules Civ. Proc., rule 56(a)[4], *Anderson v. Liberty Lobby, Inc.*, (1986) 477 U.S. 242, 247-48.

///

---

assistance) to support from any other person, ***not exceeding the total amount of assistance so paid*** to the family…" (emphasis added).

[3] Other than defined terms, subsequent undesignated section references shall be to Title 26 of the U.S. Code.

[4] Subsequent references to the Fed. Rules Civ. Proc. will be designated "**FRCP**".

# IRS MOT SUMM JDMT IS NOT SUPPORTED BY ANY ADMISSIBLE EVIDENCE

**3.** IRS submits four declarations (Dkts 55-1 to 55-4) as propounded evidence to support its motion. Hadsell objects to all of them because they are inadmissible as evidence as follows:

**A.   Lack of Foundation:**

    **i.** None of the propounded documents are authenticated.

    **ii.** IRS previously attempted to authenticate "unsealed", "public-document", evidence pursuant to Fed. Rules Evid., rule 902[5]. It failed because it didn't provide the two required signatures—and defrauded this Court in the process by purposefully misquoting the law, Dkt 17, 9:17-10:23.

    **iii.** Presumably, IRS is attempting to provide two signatures this time with the signatures of the declarant, and Mr. Watson ("**Watson**"). Unfortunately for IRS, the second signatory must be a "public officer ***who has a seal*** and official duties within that same entity ***certifies under seal***—or its equivalent—that ***the [first] signer has the official capacity and that the [first] signature is genuine***.", FRE 902(2)(B) (emphasis added). Here, IRS produces no evidence that Watson meets the required criteria of a second signatory.

        **1.** Therefore, IRS fails the requirements of FRE 902; thus, its propounded evidence is inadmissible.

**B.   Hearsay:**

    **i.** Hadsell objects to IRS' propounded evidence on the additional grounds of hearsay.

    **ii.** Because IRS' propounded evidence is inadmissible due to lack of foundation, rather than discuss the myriad of specific hearsay objections, Hadsell will discuss the hearsay objections in more general terms. If the Court would like more lengthy specific objections, Hadsell will provide them.

    **iii.** Hearsay is an out-of-court statement offered for the truth of the matter, FRCP 801(c).

    **iv.** Here, the propounded evidence is hearsay because it is: i) data printed out from IRS databases, ii) a declarant's statements about the print-outs[6]—which introduces another layer of hearsay

---

[5] Subsequent references to the Fed. Rules Evid. will be designated "**FRE**".

[6] Propounded evidence that this Court has aptly described: "As far as I can tell[,] the United States has not provided the Court with any admissible evidence. The Wolfe Declaration is simply a declaration that says I'm a lawyer and I have printed some stuff out from the database." 7/27/21 transcript (changed from all caps for readability).

(hearsay within hearsay); or iii) more hearsay within hearsay: California documents (hearsay) that are purported to evidence that California has supplied IRS with notification and certification documents (hearsay) required by §6402(c) before IRS is legally authorized to offset any Hadsell funds.

     **v.**    Because there are no exclusions, or exceptions, to IRS' hearsay, the propounded evidence is inadmissible.

     **vi.**    Additionally: i) all of the propounded evidence that derives from IRS' databases was created specifically for the IRS MOT Summ JDMT; ii) IRS itself states that its databases are untrustworthy due to COVID, Dkt 17, 8:25-28; and iii) it is undisputed that Hadsell has documented that the IRS has changed its database resulting in erroneous data, Dkt 44, 5:1-11.

     **1.**    Therefore, IRS' propounded evidence, "indicates a lack of trustworthiness" when trustworthiness is a requirement before records can be excepted from hearsay [see e.g., FRCP 803(6)(E), (7)(C), and (8)(B)].

     **vii.**    For these reasons, inter alia, IRS' propounded evidence is inadmissible hearsay.

    **C.**    **Best Evidence:**

     **i.**    In proving the terms of a writing where the terms are material, the original writing must be produced, FRE 1002. Secondary evidence of the writing (such as documents regarding the writing's contents), is permitted only after it has been shown that the original is unavailable, *Id*.

     **ii.**    Here, IRS proffers documents purporting to show that California has supplied IRS with §6402(c)'s required notification and certification. E.g., IRS provides that a letter from California ("**9/9/13 CA Ltr**") to Hadsell (Dkt 55-4, pp. 4-7) stated, "… Mr. Hadsell was notified by the California Department of Child Support Services that his overdue child support obligations were being referred to the United States Department of Health and Human Services ("HHS") for potential collection through the Tax Offset Program."

     **1.**    First, nowhere in the document are the words "United States Department of Health and Human Services" ("**HHS**") to be found, nor any statement that any debt was being referred to any collection agency or program. More importantly, nowhere does this document state that California has provided HHS with any notification or certification as required pursuant to §6402(c).

     **2.**    Second, this evidence in inadmissible, because it violates FRE 1002, unless and

until, IRS produces the document(s) of California's Notification and/or Certification.

**D.    Irrelevant:**

**i.**    This case involves tax returns for the years 2016 to 2018. Many of the documents propounded as evidence (such as the 9/9/13 CA Ltr discussed *supra*, all of Hale's Declaration (Dkt 55-3) regarding HHS' review of the 9/9/13 CA Ltr[7], and Parra's Declaration (Dkt 55-4) providing a copy of the 9/9/13 letter) specifically involve the timeframe 9/9/13 and "during the next 12 months"; viz., 9/9/13 to 9/9/14. That timeframe is irrelevant to this case's 2016 to 2018 timeframe.

**ii.**    Absurdly, IRS has propounded in this case IRS letters to taxpayers "James & Karen Q Hinds" of "Hanson, CT" dated 2/9/18, Dkt 55-1, p 27; and 1/30/18, Dkt 55-1, pp. 32-39. Clearly, these documents are irrelevant. Good grief.

**E.    IRS Misfire:**

**i.**    On one occasion, IRS attempts to skirt the issues of inadmissibility by referencing one of Hadsell's admissible documents, Dkt 55, 3:23-24 (fn 1). Unfortunately, the IRS erred. It is discussing Hadsell's "2016 Tax Year", Dkt 55, 3:16-18, but refers to Hadsell's document for 2017[8], and Hadsell has not proffered a similar document for 2016.

**4.    Conclusion:**

**A.**    For the foregoing reasons, inter alia, Hadsell objects to IRS' propounded evidence because it is inadmissible. Because the IRS MOT Summ JDMT involves no admissible facts, it is invalid legal argument because there can be no legal analysis of the law applied to the facts of the case when there are no facts. Therefore, the IRS MOT Summ JDMT should be denied.

# IRS FAILED TO DISCLOSE PROPOUNDED EVIDENCE PER FRCP 26; SO SHOULD BE BARRED FROM USING IT HERE

**5.**    IRS' original filing due date for its Answer was 7/28/20, "**IRS Orig Ans Date**".

**6.**    IRS' FRCP 26(a) Initial Disclosures date was 5/28/21, "**IRS Int'l Discl Date**".

**7.**    IRS' propounded evidence for the IRS MOT Summ JDMT was available as follows:

---

[7] Astoundingly, the Hale Declaration notes (Dkt 55-3, 2:3-6) that HHS reviewed the irrelevant letter to ensure compliance with §664(a)(2) (California's notification of potential collection efforts to Hadsell), but most tellingly, failed to indicate that HHS reviewed California's crucial compliance with §664(a)(1)—California's required notification and certification to comply with §6402(c).
[8] See Dkt 1, p. 83, "TAX PERIOD: Dec. 31, 2017".

**A.    Reed Declaration**, Dkt 55-1:

    **i.**    IRS 2016 to 2018 "Transcripts": 6/25/20, e.g., Dkt 55-1, p. 8.

        **1.**    Over a month before the IRS Orig Ans Date.

        **2.**    Over 11 months before IRS Init'l Discl Date.

    **ii.**    Pages from Hadsell's 2016 tax return: 4/17/17, Dkt 55-1, pp. 15-16.

        **1.**    Over 3 years before the IRS Orig Ans Date.

        **2.**    Over 4 years before IRS Init'l Discl Date.

    **iii.**    IRS letter dated 6/6/17, Dkt 55-1, pp. 18-19.

        **1.**    Over 3 years before the IRS Orig Ans Date.

        **2.**    Over 4 years before IRS Init'l Discl Date.

    **iv.**    IRS letter dated 7/31/17, Dkt 55-1, pp. 21-23.

        **1.**    Three years before the IRS Orig Ans Date.

        **2.**    Nearly 4 years before IRS Init'l Discl Date.

    **v.**    Hadsell letter dated 8/8/17, Dkt 55-1, p. 25

        **1.**    Nearly 3 years before the IRS Orig Ans Date.

        **2.**    Nearly 4 years before IRS Init'l Discl Date.

    **vi.**    Pages from Hadsell's 2017 tax return: 4/16/18, Dkt 55-1, pp. 29-30.

        **1.**    Over 2 years before the IRS Orig Ans Date.

        **2.**    Over 4 years before IRS Init'l Discl Date.

    **vii.**    Pages from Hadsell's 2018 tax return: 4/12/19, Dkt 55-1, p. 39.

        **1.**    Over a year before the IRS Orig Ans Date.

        **2.**    Over 2 years before IRS Init'l Discl Date.

**B.    Edmonds Declaration**, Dkt 55-2:

    **i.**    Treasury Dept. letter dated 7/28/17, Dkt 55-2, p. 11.

        **1.**    Three years before the IRS Orig Ans Date.

        **2.**    Nearly 4 years before IRS Init'l Discl Date.

    **ii.**    Treasury Dept. letter dated 5/18/18, Dkt 55-2, p. 12.

        **1.**    Over 2 years before the IRS Orig Ans Date.

      **2.**    Over 3 years before IRS Init'l Discl Date.

   **iii.**   Treasury Dept. letter dated 10/15/18, Dkt 55-2, p. 13.

      **1.**    Nearly 2 years before the IRS Orig Ans Date.

      **2.**    Nearly 3 years before IRS Init'l Discl Date.

   **iv.**   Treasury Dept. letter dated 4/19/19, Dkt 55-2, p. 14.

      **1.**    Over a year before the IRS Orig Ans Date.

      **2.**    Over 2 years before IRS Init'l Discl Date.

   **v.**   Because all of these documents were available to IRS well within the timeframe to meet its original Answer due date, it is clear that IRS didn't require the Court's gracious enlargement of its due date.

   **vi.**   Because these documents were available ***years*** before IRS' Initial Disclosure date (except for one that was available 11 months earlier), yet IRS failed to disclose them as required by FRCP 26(a) and (e), Hadsell moves that the Court bar the use of these documents pursuant to FRCP 37(c)(1), *Merchant v. Corizon Health, Inc.* (9th Cir. 2021) 993 F.3d 733, 741-742.

## IRS FAILED TO ADDRESS HADSELL'S CLAIM THAT IRS CANNOT APPLY OFFSETS TO CREDIT ELECTION FUNDS

**8.**    In the §6513(d) discussions regarding whether Credit Election Funds become estimated tax payments as of the filing date of a taxpayer's next-year tax return, Hadsell's claim that IRS lacks any legal authority to offset Credit Election Funds has been ignored (see, e.g., Dkt 24, 10:27-11:7, 16:3-8).

**9.**    Because this issue remains outstanding, the IRS MOT Summ JDMT should be denied.

## IRS WILL DO, OR SAY, ANYTHING

**10.**    The IRS argues (Dkt 55, 14:8-24, color highlights added):

When Mr. Hadsell submitted his 2016 return, the IRS promptly determined that there was an issue with a premium tax credit and proceeded to request additional information ["**IRS Stmt 1**"]. The IRS also notified Mr. Hadsell, on the day his return was processed, that his credit election request would not be honored ["**IRS Stmt 2**"]. While the IRS continued to audit the return, it released as much of Mr. Hadsell's refund as it could. The IRS completed its audit a little over a year from when the 2016 return was first filed – well within the statutory 3-year limit Congress gave it to assess additional tax. At every step along the way, the IRS notified Mr. Hadsell of what was occurring ["**IRS Stmt 3**"]. Indeed, Mr. Hadsell was engaged in active correspondence with the IRS about these issues.

To the extent Mr. Hadsell was upset or surprised by the fact that his credit election was not immediately honored, it reflects a fundamental misunderstanding of the audit process. By the

time he filed his 2017 return, Mr. Hadsell was aware from the IRS's many notices not only that his 2016 return remained under audit, but also that the partial refund he had already been granted for 2016 had been applied to past-due child support (and was therefore no longer available as a credit for the next year). ["**IRS Stmt 4**"] Simply put, it was at best an unreasonable mistake for Mr. Hadsell to file his 2017 return on the assumption that he would be allowed a carryforward election that he knew remained partially under audit and had been partially directed to other debts through the Treasury Offset Program.

11.    **IRS Stmt 1:**

   **A.**    The "issue" with a "[health-insurance] premium tax credit" is that ***Hadsell did not qualify for the credit***; therefore, ***Hadsell did not file for the credit***. Notwithstanding, IRS notified Hadsell that IRS wanted to mistakenly issue Hadsell a health-insurance premium tax. Therefore, IRS requested that Hadsell file additional materials so that IRS could issue the tax credit.

   **B.**    Hadsell explained to IRS that he did not qualify for the tax credit.

   **C.**    Due to IRS procedural requirements to close out the issue, IRS requested Hadsell file an additional tax form so that IRS could correct its error.

      **i.**    Hadsell filed the requested form on 8/8/17.

   **D.**    Hadsell heard no more of the issue after 8/8/17.

   **E.**    This "issue" was entirely IRS' error. The issue did not, nor could it, affect Hadsell's valid, 2016 credit election of $9,547.

   **F.**    Notwithstanding, IRS absurdly suggests this "issue" put Hadsell on notice that his 2016, $9,547 wasn't available when he filed his 2017 return, IRS Stmt 4. Good grief.

12.    **IRS Stmt 2:**

   **A.**    IRS outrageously states, with no facts, and no documentation, that it notified Hadsell on 7/31/17[9] that his 2016, $9,547 credit election would not be honored. That is a complete fabrication. Where is this fictional document? It cannot be produced, and has not been produced, because there is no such notification document.

   **B.**    Again, IRS absurdly suggests that this nonexistent "notification" put Hadsell on notice that his 2016, $9,547 wasn't available when he filed his 2017 return, IRS Stmt 4. Good grief.

13.    **IRS Stmt 3:**

   **A.**    As the many letters, over several years, that Hadsell wrote IRS requesting information as

---

[9] This is the date IRS alleges was the processing date, but that is based upon inadmissible, untrustworthy evidence, so Hadsell doesn't know if the date is valid.

to IRS' actions, and the lack of any legal explanation or justification provided by IRS attest, it is absurd for IRS to suggest that it kept Hadsell informed of "what was occurring" with Hadsell's tax returns.

**14.   IRS Stmt 4:**

    **A.**    As detailed *supra*, Hadsell was unaware of any on-going audit of his 2016 tax return after he corrected IRS' health-insurance premium tax "issue" error as of 8/8/17.

    **B.**    It is undisputed that Hadsell was first informed of IRS' illegal diversion of his 2016 Credit Election Funds on 5/8/18—well after his 2017 tax return filing of 4/16/18.

    **C.**    Therefore, it is absurd that IRS now claims Hadsell was aware of any ongoing 2016 audit, or IRS' illegal diversion of his 2016 Credit Election Funds as of his 4/16/18 filing of his 2017 return.

**15.   The Court Should Declare Its View to IRS' Actions:**

    **A.**    Early on in this case, in response to IRS' actions, this Court stated, "The record presented indicates that defense counsel has not been diligent or attentive to deadlines, and Mr. Hadsell is understandably frustrated by the resulting delays.", Dkt 30, 1:19-20. In the next paragraph, the Court followed with, "In addition to addressing the issues raised in Mr. Hadsell's motion, the United States should address the issues raised in the Court's February 3 order…", Id., 1:26-2:1. Even earlier still, the Court stated, "Going forward in this matter, the government is admonished to comply with the Court's Civil Local Rules.", Dkt 9, 1:28.

    **B.**    With the benefit of hindsight, we now know that the Court's admonishments intended to curb IRS' misbehavior, appear to have emboldened IRS to further sanctionable behavior, FRCP 11(b).

    **C.**    What is the Court's view of IRS' behavior?

## IRS VIOLATED HADSELL'S, AND HIS CHILD'S, PRIVACY

**16.**    The judiciary takes privacy seriously.

**17.**    Indeed, ***with every single log-in*** by IRS for its required use of the ECF system for its filings, first, to obtain access to the system, IRS must click on a checkbox acknowledging, "***All*** filers ***must redact***: ***Social Security… numbers***; … ***names of minor children***… in compliance with Fed. R. App. P. 25(a)(5)…" (emphasis added).

**18.**    Hadsell acknowledges that tax documents include numerous occasions where Social Security Numbers ("**SSN**") are included. Thus, perhaps a layperson could be excused a truly innocent

mistake of failing to redact an SSN.

**19.** However, here, tax forms are the daily grist, and lifeblood, of IRS attorneys, and the declarants in the IRS MOT Summ JDMT who declare their experience and expertise.

**20.** Yet, IRS publicly divulged Hadsell's SSN at Dkt 55-1, p. 18, and Dkt 55-2, p. 11.

**21.** Abominable. Contemptible. Atrocious. Brazen. Scandalous. Disgraceful. Heinous. There are no words to capture and describe IRS' behavior in publicly disclosing Hadsell's son's name and SSN at Dkt 55-1, p. 15.

**22.** Hadsell moves that the Court strike, and remove, Dkts 55-1 and 55-2 from the record.

**23.** Finally, enough is enough.

**A.** IRS has amply demonstrated that admonishments do not affect its behavior. Unlike typical sanctions proceedings, the safe harbor provisions of allowing IRS to merely remove the offending document cannot undo the harm since IRS' publicly disclosed bellringing cannot be unrung.

**B.** Therefore, Hadsell moves that the Court sua sponte invoke its power pursuant to FRCP 11(c)(3) to require IRS to show cause why it should not be sanctioned pursuant to FRCP 11(b), *In re Itel Sec. Litig.* (9th Cir. 1986) 791 F.2d 672, 675. As *Itel*, 675 provides:

> The imposition of sanctions under the inherent power of the court is proper where counsel has "'willfully abused judicial process' or otherwise conducted litigation in bad faith." *Toombs v. Leone*, 777 F.2d 465, 471 (9th Cir. 1985) (quoting *Roadway Express*, 447 U.S. at 766). *See also Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 258-59… (quoting *F.D. Rich Co., Inc. v. United States ex rel. Industrial Lumber Co., Inc.*, 417 U.S. 116, 129… (a court may impose sanctions against a party that has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons").

**C.** Hadsell calls upon the Court to act sua sponte because any resulting financial sanctions are payable to the Court—thereby demonstrating beyond any doubt that Hadsell's motivation is to curb IRS' abuse of judicial process since Hadsell cannot gain personally from such an IRS sanction.

# IRS CONTINUES TO VIOLATE THE COURT'S ORDER

**24.** By the grace of N.D. Cal. Civil L.R. 11-2[10], counsel for the United States is exempt from Civ. L.R. 11-1's admission requirements, and membership in, the Bar of this Court. Instead of gratefully accepting that grace, and humbly acting accordingly,[11] the IRS has treated this Court as its own

---

[10] Subsequent references to the N.D. Cal. Civil L.R. will be designated "**Civ. L.R.**".

[11] Especially since not a scintilla of evidence has been provided to this Court that Messrs. David a. Hubbert, Rick Watson, or Jonathan M. Hauck actually qualify for Civ. L.R. 11-2's exception.

home-court advantage, and backyard playground, by running roughshod over court rules and procedures.

**A.**    As a reminder of only four of IRS' past transgressions in this case:

  **i.**    Failure to file timely Answer.

    **1.**    This could have resulted in a default judgment in favor of Hadsell, FRCP 12(a)(1)(A)(i). Indeed, although the Court's ruling was well within judicial norms to allow this case to be judged upon the merits, in retrospect, this case should have resulted in a default judgment for Hadsell given: i) IRS' egregious subsequent behavior, and ii) IRS' untimely Answer was not based upon any excusable neglect because it failed to rely upon a single fact, issue, rule, regulation, or statute, etc. that was unknown, or unavailable, prior to IRS' original deadline, see Dkt 17, 7:13-8:8;

  **ii.**    It is undisputed that IRS purposefully misled this Court on the law on several occasions, e.g., Dkt 17, 9:17-10:23;

  **iii.**    It is undisputed, indeed the Court has ruled [Dkt 9, 1:27-28 (fn 2)], that IRS failed to follow local rules on numerous occasions; and

  **iv.**    It is undisputed that IRS has misled this Court about the facts of the case, e.g., Dkt 17, 8:23-9:16; and indeed, with wanton disregard, has published another taxpayer's records. Good grief.

**25.**    In the absence of these transgressions, Hadsell would not normally raise the issue of the IRS MOT Summ JDMT's failure to comply with Civ. L.R. 7-2(b)(2) that requires "a motion ***must*** contain:… In the first paragraph, notice of the motion including date and time of hearing;…" (emphasis added).

**A.**    Indeed, Hadsell has not raised the same failure in IRS' Dkts 7, 13, 27, and 49.

**B.**    However, given the Court's admonishment that IRS follow Civil Local Rules [Dkt 9, 1:27-28 (fn 2)], it is appropriate to raise yet another example of, "How the IRS rolls" (see Dkt 51, 1:22-2:9; 2:13-3:6) with IRS' failure to comply here with the Court's Order and Civ. L.R. 7-2(b)(2).

# CONCLUSION

**26.**    For the reasons provided here, and based upon the records, files, and proceedings in this case, the IRS MOT Summ JDMT should be denied.

Dated: November 23, 2021                    Respectfully submitted,

                                        _Christopher Hadsell_
                                        Christopher Hadsell, Plaintiff