Christopher Hadsell
Plaintiff
9000 Crow Canyon Rd., S-399
Danville, CA 94506
Email: CJHadsellLaw@gmail.com
Tel: (925) 482-6502

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

Christopher Hadsell,

   Plaintiff,

vs.

United States of America, the Department of
Treasury by its agency, the Internal Revenue Service

   Defendant.

Case No.:   20-cv-03512-VKD

**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO ALTER, AMEND, OR VACATE THE COURT'S ORDER DENYING (DKT 56) PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT 24) UNDER FRCP 59(e)**

**Date**:   1/4/22
**Time**:   10:00 a.m.
**Location**:   Courtroom 2, 5th Floor
**Judge**:   Hon. Virginia K. DeMarchi

# NOTICE OF MOTION

TO THE COURT, ALL PARTIES, AND ALL ATTORNEYS OF RECORD:

Please take notice that on 1/4/22 at 10:00 a.m., or as soon thereafter as the matter can be heard in the courtroom of Honorable Virginia K DeMarchi, located at Courtroom 2, 5th Floor, 280 South 1st St., San Jose, California, Plaintiff, Christopher Hadsell ("**Hadsell**") will, and hereby does, move the Court, pursuant to Fed. Rules Civ. Proc., rule 59(e) for an order to Alter, Amend, or Vacate the Court's Order Denying (Dkt 56) Plaintiff's Motion for Summary Judgment (Dkt 24).

Hadsell brings this motion on the ground that the Court committed clear errors resulting in a decision that is manifestly unjust.

This motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the files and records in this matter, any evidence or argument presented at any hearing on this matter, and the attached Proposed Order.

1

Plaintiff's Notice of Motion and Motion to Alter, Amend, or Vacate the Court's Order Denying (Dkt 56) Plaintiff's Motion for Summary Judgment (Dkt 24) Under FRCP 59(e)

Case No.:
20-cv-03512-VKD

1 Dated: November 30, 2021                Respectfully submitted,

2

3                                         Christopher Hadsell, Plaintiff

4 [Rest of this page intentionally left blank.]

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Christopher Hadsell
Plaintiff
9000 Crow Canyon Rd., S-399
Danville, CA 94506
Email: CJHadsellLaw@gmail.com
Tel: (925) 482-6502

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Christopher Hadsell, | Case No.:   20-cv-03512-VKD |
| Plaintiff, | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S NOTICE OF MOTION AND MOTION TO ALTER, AMEND, OR VACATE THE COURT'S ORDER DENYING (DKT 56) PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT 24) UNDER FRCP 59(e)** |
| vs. | |
| United States of America, the Department of Treasury by its agency, the Internal Revenue Service | |
| Defendants. | |
| | **Date**:   1/4/22 <br> **Time**:   10:00 a.m. <br> **Location**:   Courtroom 2, 5th Floor <br> **Judge**:   Hon. Virginia K. DeMarchi |

[Rest of this page intentionally left blank.]

# Table of Contents

**Page**

**TABLE OF AUTHORITIES** ................................................ **5**

**MEMORANDUM OF POINTS AND AUTHORITIES** ................. **6**

**INTRODUCTION** ........................................................**6**

FUNDAMENTAL PRINCIPLES OF THIS CASE ...............................6

**LEGAL STANDARD** ....................................................**7**

MOTION TO ALTER, AMEND, OR VACATE AN ORDER UNDER

FRCP 59(E) ..................................................................7

**STATEMENT OF FACTS** ..............................................**7**

IRS ANSWER ...............................................................8

**ARGUMENT** ..............................................................**9**

THIS MOTION SHOULD BE GRANTED AND THE ATTACHED

PROPOSED ORDER THAT GRANTS HADSELL'S MOTION

FOR SUMMARY JUDGMENT SHOULD BE ENTERED .........................9

The 11/19/21 Order Errs When It States That §6402(g) Applies ...................10

The 11/19/21 Order Errs In Its Analysis of Credit Election Law ...................12

IRS Is At It Again—It Must Be Stopped ........................................16

**CONCLUSION** ...........................................................**17**

**EXHIBIT 1: 10/18/21 IRS LETTER** ............................................ **19**

# **TABLE OF AUTHORITIES**

## **Cases**

*Brady v. United States* (D.Mass. 1927)
  24 F.2d 205 ....................................................................................................... 15
*City of Fresno v. U.S.* (E.D. Cal. 2010)
  709 F.Supp.2d 888 ................................................................................................ 7
*Howard v. U.S.* (6th Cir. 2008)
  533 F.3d 472 ......................................................................................................... 7
*Lyeth v. Hoey* (2d Cir. 1940)
  112 F.2d 4 ........................................................................................................... 15
*McDowell v. Calderon* (9th Cir. 1999)
  197 F.3d 1253 ....................................................................................................... 7
*Reich v. Collins* (1994)
  513 U.S. 106 ....................................................................................................... 17
*Wood v. United States* (S.D.N.Y. 1953)
  121 F.Supp. 769 ................................................................................................. 15

## **Rules**

Fed. Rules Civ. Proc., rule 59(e) ........................................................................... 7

## **Statutes**

26 U.S.C. §6402(a) ......................................................................................... 13, 14
26 U.S.C. §6402(b) ..................................................................................... 13, 14, 16
26 U.S.C. §6402(c) ................................................................................ 10, 11, 13, 17
26 U.S.C. §6402(g) ..................................................................................... 9, 10, 11
26 U.S.C. §6501(a) ............................................................................................. 15
26 U.S.C. §6513(b)(2) ..................................................................................... 13, 14
26 U.S.C. §6513(d) ..................................................................................... 13, 14, 16
26 U.S.C. §6611(a) ............................................................................................. 13
26 U.S.C. §6611(e)(1) ......................................................................................... 13
28 U.S.C. §453 .................................................................................................... 6
42 U.S.C. §608(a)(3) ................................................................................... 8, 10, 13
42 U.S.C. §664(a)(1) ..................................................................................... 10, 11
U.S. Const. ........................................................................................................ 6
U.S. Const. amend. I ........................................................................................... 6
U.S. Const. amend. V .......................................................................................... 6
U.S. Const. art. II, §3 .......................................................................................... 6
U.S. Const. art. VI, cl. 3 ...................................................................................... 6

## **Other Authorities**

Black's Law Dictionary (11th ed. 2019) ................................................................. 9
Internal Revenue Service,
  https://www.irs.gov/refunds/what-to-expect-for-refunds-this-year (last visited November 29, 2021) 14
Oxford English Dictionary 1190 (2d ed., CD-ROM ver. 4.0) .................................... 9

# MEMORANDUM OF POINTS AND AUTHORITIES

1. **Introduction**:

    A.    **Fundamental Principles of This Case**:

        i.    The fundamental principles of this case are simple:

            1.    Hadsell alleges that the Executive Branch of the federal government failed its duty to "take Care that the Laws be faithfully executed" (U.S. Const. art. II, §3) by violating Hadsell's rights; because

            2.    the Secretary, by its agency, the Internal Revenue Service ("**IRS**"), committed an unlawful taking of Hadsell's assets in violation of U.S. Const. amend. V, "**5th Amend.**".

            3.    As a result, Hadsell is simply exercising his 1st Amend. right (U.S. Const. amend. I) "[T]o petition the Government for a redress of grievances…" because IRS took Hadsell's, "private property… for public use, without just compensation.", 5th Amend.

            4.    Hadsell has exhausted administrative procedure to have IRS correct its violations. Hadsell must now call upon the Court to: i) follow its two required oaths[1] of office, and thereby, ii) exercise its constitutional power of checks and balances on the Executive Branch to reverse the Executive Branch's violations of Hadsell's constitutional rights.

            5.    Hadsell identifies the underlying, fundamental constitutional issues in this case because thus far, with all due respect, this case seems to have frequently misplaced its focus on the minutia of federal statutes, IRS regulations, and hypothesized facts that do not apply, thereby missing the import of crucial words in the statutes and regulations, and also missing crucial aspects of the facts.

    B.    These fundamental principles, combined with the grounds and the arguments for this motion discussed *infra*, establish that manifest injustice will otherwise result unless the Court grants this motion to alter, amend, or vacate the Court's Order filed 11/19/21 (Dkt 56, "**11/19/21 Order**").

    C.    With all due respect, this motion is brought on the grounds, and the arguments that:

---

[1] A federal judge must take two oaths before s/he may execute his/her duties: i) the U.S.-Const.-art.-VI,-cl.-3 Oath that requires him/her, "[T]o support this Constitution…", and ii) the Judicial Oath that requires him/her to, "[A]dminister justice without respect to persons, and do equal right to the poor and to the rich, and… faithfully and impartially discharge and perform all the duties incumbent upon me… under the Constitution and laws of the United States.", 28 U.S.C. §453. Both oaths require every federal judge to use his/her powers to prohibit any violation of the U.S. Const.

6

Plaintiff's Notice of Motion and Motion to Alter, Amend, or Vacate the Court's Order Denying (Dkt 56)    Case No.:
Plaintiff's Motion for Summary Judgment (Dkt 24) Under FRCP 59(e)    20-cv-03512-VKD

      **i.**     In the Court's statutory analysis, it inadvertently failed:

          **1.**    to give meaning to all the words in the statutes; and

          **2.**    to note the full context of the facts it utilized.

      **ii.**    As a result, the Court's analysis appears to inadvertently give rise to misinterpretation of the law and the facts that are clear errors resulting in a decision that is manifestly unjust.

**2.**   **Legal Standard**:

   **A.**   **Motion to Alter, Amend, or Vacate an Order Under FRCP 59(e)**:

      **i.**     FRCP 59(e) provides a mechanism for a court to alter, amend, or vacate a prior order, *City of Fresno v. U.S.* (E.D. Cal. 2010) 709 F.Supp.2d 888, 916.

      **ii.**    FRCP 59(e) motions are appropriate, "if the district court… committed clear error or the initial decision was manifestly unjust…", *Fresno*, 916.

      **iii.**   FRCP 59(e) does not specify the grounds on which a court may alter or amend a judgment, or a standard under which a court may grant relief. Courts usually grant these motions when the judgment fails to account for dispositive factual matters or controlling decisions of law, *McDowell v. Calderon* (9th Cir. 1999) 197 F.3d 1253, 1255, and fn. 1.

      **iv.**   By altering, amending, or vacating a judgment under FRCP 59(e), a district court can correct any mistakes thereby, "'sparing the parties and appellate courts the burden of unnecessary appellate proceedings', [Citation]", *Howard v. U.S.* (6th Cir. 2008) 533 F.3d 472.

**3.**   **Statement of Facts**:

   **A.**   As the 11/19/21 Order Order states, "Except as otherwise noted, th[]e facts are largely undisputed and are recited below:..", Dkt 56, 2:4-5.

   **B.**   The 11/19/21 Order didn't note any disputed facts.

   **C.**   Notwithstanding, the 11/19/21 Order states that a portion of an overpayment was refunded to Hadsell. Hadsell disputes that because he has not received any refund from the IRS.

   **D.**   Hadsell adds to the 11/19/21 Order's facts the undisputed, verified facts that:

      **i.**     not he, nor his ex-wife, nor any of his children, have ever received governmental financial aid, (see e.g., Dkt 41, 11:26-28);

      **ii.**    neither his ex-wife, nor any of his children have ever assigned any support payment to

California, *Id*., 12:1-3;

     **iii.**    spousal support has ceased, and his children have reached majority; therefore, no future support payments can be awarded to serve as an assignment to California, Dkt 57, 2:8-12; and

     **iv.**    even if any support payment were ever assigned to California, any such assignment would be limited to the "amount of assistance so paid" [42 U.S.C. §608(a)(3)] to Hadsell's family—which, undisputedly, is $0, Dkt 41, 11:26-28.

    **E.**    **IRS Answer**:

     **i.**    The 11/19/21 Order states (Dkt 56, 5:12-17; 6:1-5, color highlights added):

> Mr. Hadsell argues that in its answer (Dkt. No. 36), the IRS admits to allegations in paragraph 12 and paragraph 14 of his complaint that the IRS accepted his credit elections and that the alleged wrongful acts were committed by IRS employees, as well [as] allegations concerning his claimed damages. *See* Dkt. No. 1, ¶¶ 12, 14.B.ii; Dkt. No. 41 at 9, 10. However, in the cited portions of its answer, the IRS admitted only that the acts listed in paragraph 12 of the complaint "related to [Mr. Hadsell's] *filing*" of income tax returns and related documents are accurate and that the complaint "contains allegations against IRS employees." Dkt. No. 36 at 2:15-16, 3:1 (emphasis added). The IRS otherwise denies that it applied the credit elections to Mr. Hadsell's 2017 income tax liabilities and denies that the alleged actions are improper. *Id*. at 2:15-17, 3:1-2. Thus, Mr. Hadsell's contentions regarding the scope and nature of the United States's purported admissions are not accurate.

     **ii.**    With all due respect, the 11/19/21 Order appears not to read IRS' Answer (Dkt 36) quite carefully enough, and therefore, errs when it concludes that, "Hadsell's contentions regarding the scope and nature of the United States's purported admissions are not accurate." (Dkt 56, 6:5-6) as follows:

       **1.**    The entire ***context*** of Dkt 1, ¶12 is controlled by its first sentence because every subsequent word is a subparagraph of this ablative absolute opening sentence, "**12.** In chronological order, Hadsell: i) paid tax payments to the IRS, ii) made Credit Elections, and iii) the ***IRS accepted the Credit Elections*** as follows:" (emphasis, and color highlights added). This opening sentence, literally, lists three separate categories of acts, all of which, ***are related*** to Hadsell's filing income tax returns and the documents related to his tax returns; to wit: Hadsell: i) made tax payments (literally acts) ***related to*** his income tax filing, ii) he made Credit Elections (literally acts) in one of two ways: a) on his income tax form itself, ***related to*** his income tax filing, and b) in his letters to IRS in ***related documents***; and iii) IRS accepted (literally acts) Hadsell's Credit Elections, all of which were ***related to*** his income tax filing, and ***related documents***.

        **a.**     An action is, "The process of doing something; conduct or behavior.", Black's Law Dictionary (11th ed. 2019). Paying taxes, making Credit Elections (defined at Dkt 41, 9:15-22), and accepting Credit Elections are all, "the process of doing something", or "conduct" related to Hadsell's filing his tax returns and corresponding with IRS via documents relating to his tax returns.

        **b.**     Thus, IRS' statement, "Admits that the acts Plaintiff lists related to his filing of income tax returns and related documents are accurate.", (Dkt 36, 2:15-16). Accurate means, "Of things, without special reference to the evidence of care: Exact, precise, correct, nice; ***in exact conformity*** to a standard or ***to truth***.", Oxford English Dictionary 1190 (2d ed., CD-ROM ver. 4.0) (emphasis added). Thus, IRS, ***literally*** admits that every act listed in ¶12 is the truth. That is Hadsell's contention, and IRS admits to Hadsell's contention in no uncertain terms.

        **iii.**    IRS states, "Denies that the IRS ***applied*** the credit elections to Plaintiff's 2017 income tax liabilities.", Dkt 36, 2:16-17 (emphasis added). That is exactly correct! But it completely misses the point. IRS ***does not deny*** that IRS ***accepted*** Hadsell's Credit Elections. Indeed, in the preceding sentence, IRS admitted just that! What is states here (perfectly consistent with is admission), is that IRS failed ***to apply*** Hadsell's Credit Elections to his account. Indeed, that is exactly what it did. It revoked Hadsell's Credit Election, after it accepted it—exactly as Hadsell contends. And importantly, just as the 11/19/21 Order holds (Dkt 56, 7:23-28), once a Credit Election is accepted, it is binding, and thus, IRS violates the law when it revokes Hadsell's Credit Elections.

        **1.**     Thus, with all due respect, the 11/19/21 Order inadvertently fails to appreciate IRS' word games where IRS correctly admits that it failed to ***apply*** Hadsell's Credit Elections, and also correctly admits that it ***accepted*** Hadsell's Credit Elections.

### 4.    Argument

### A.    This Motion Should Be Granted and the Attached Proposed Order That Grants Hadsell's Motion for Summary Judgment Should Be Entered

With all due respect, the 11/19/21 Order appears to: i) incorrectly apply §6402(g); ii) incorrectly analyze the combined effects of the Credit Election laws; and iii) with perfect timing, IRS demonstrates the ongoing impact of allowing IRS to continue to violate the law. Analyses of these issues are provided as follows:

9

Plaintiff's Notice of Motion and Motion to Alter, Amend, or Vacate the Court's Order Denying (Dkt 56)    Case No.:
Plaintiff's Motion for Summary Judgment (Dkt 24) Under FRCP 59(e)    20-cv-03512-VKD

### i.    The 11/19/21 Order Errs When It States That §6402(g) Applies

**1.**    The 11/19/21 Order states (emphasis added):

Insofar as [Hadsell]'s arguments essentially challenge the validity of offsets made under § 6402(c), his remedy is to raise such a challenge with the relevant agency, not the IRS. *See* 26 U.S.C. § 6402(g) ("No court of the United States shall have jurisdiction to hear any action, whether legal or equitable, brought to restrain or review a reduction ___**authorized**___ by subsection (c)…

**2.**    With all due respect, that analysis is incorrect for at least ==two reasons==.

**3.**    The error results because the 11/19/21 Order inadvertently reads the word "authorized" out of 26 U.S.C. §6402(g). As the 11/19/21 Order states (Dkt 56, 11:23-26), "'Such a result is one [courts] must avoid, as it is not within the judicial province to read out of the statute the requirement of its words.' [Citations]."

**4.**    The ==first== reason is: ___**if**___, provided first, any reduction ___**is**___, "___**authorized**___ by subsection (c)" (§6402(g)), ___**then**___ Hadsell's remedy would be limited to seeking relief from California.

**a.**    Here, it is dispositive of this case that IRS is ___**not authorized**___ by §6402(c) to offset any of Hadsell's funds as follows:

**A)**    The government's takings of money pursuant to §6402(c) were designed for use against "Dead-beat Dads"; therefore, the measures are Draconian (Dkt 41, 12:7-16). Because they are Draconian, there are significant safeguards that must be met ___**before**___ IRS is "authorized" to act; thereby, prohibiting infliction of such measures upon non-Dead-beat Parents, such as Hadsell.

**i)**    Here, §6402(c) requires that, "the Secretary has been notified by [California] in accordance with [42 U.S.C. §664]" of "past-due support owed by [Hadsell]…".

**ii)**    Specifically, 42 U.S.C. §664(a)(1) ["**§664(a)(1)**"] requires, pursuant to 42 U.S.C. §608(a)(3) ["**§608(a)(3)**"], that "[California]… ___**shall require**___, as a condition of paying assistance to a family under the State program funded under this part, that a member of the family assign to the State any right the family member may have (on behalf of the family member or of any other person for whom the family member has applied for or is receiving such assistance) to support from any other person, ___**not exceeding the total amount of assistance so paid**___ to the family…" (emphasis added).

**iii)**    As detailed in Dkt 41, 11:15-12:6, it's impossible for California:

**1)**    to notify the Secretary of any valid, court-ordered, past-due support; or

10

**2)**      to certify an amount of past-due support to which California is entitled; because

**3)**      even if there were past-due support owed (which there is not), ***there is no assignment*** of any past-due support to California as ***required*** by §664(a)(1).

**iv)**      This "assignment" is no minor detail. It's the entire legal basis for IRS' actions to offset Refund Funds (defined at Dkt 41, 9:15-18) because ***an assignment of past-due support to California can only occur*** if: i) California has paid benefits to Hadsell's family; ii) a Hadsell family member has assigned past-due payments to California; ***AND*** (not ***IF***) iii) Hadsell has valid, court-ordered, past-due support outstanding.

**v)**      Not only does Hadsell ***not*** have any valid, court-ordered, past-due support (which is beyond the scope of these proceedings), but even if he did, what ***is*** within the requirements of federal law, and therefore ***is*** within the scope of these proceedings, is that it's indisputable that no benefits have ever been paid to Hadsell's family (Dkt 41, 12:1-3). Therefore, no assignment of past-due support ***has***, nor ***can it be***, assigned to California because: i) spousal support has ceased, and ii) all of Hadsell's children have reached their majority—thereby ending family support. But even if an assignment had been made, it would be limited to the "amount of assistance so paid" to Hadsell's family—which, undisputedly, is $0.

**vi)**      Because it is impossible, under any circumstances, for IRS to be "authorized" to act pursuant to §6402(c), not only is §6402(g) inapplicable, but these facts, and these laws, are dispositive of the case in Hadsell's favor.

**5.**      The second reason is: even if IRS were somehow, theoretically "authorized" to act, as discussed *supra*, any IRS authority is limited to $0. Thus, for all practical purposes, IRS' authority to act is equivalent to no action at all.

**a.**      Again, this fact, and the law, are dispositive of the case in Hadsell's favor.

**6.**      Regarding California's failure to provide Notice and Certification, the 11/19/21 Order states, Dkt 56, 7:16-19:

[A]lthough Mr. Hadsell contends that it is not his burden to prove a negative, he has not presented evidence showing that the State of California did not send a properly certified notice of overdue child support obligations to the United States; and, at the motion hearing, he

11

acknowledged that he has not conducted discovery on this particular issue.

7.     The 11/19/21 Order states that there is no genuine dispute as to any material fact, thus, the remaining issue is whether Hadsell is entitled to judgment as a matter of law, Dkt 56, 6:20-22.

a.     First, as discussed *supra*, Hadsell is entitled to judgment as a matter of law on at least two bases with evidence he presented here, and in his Motion for Summary Judgment (Dkt 41) where the existence of California's Notification and Certification are irrelevant because they are impossibilities. Thus, with all due respect, the 11/19/21 Order is incorrect because Hadsell did "present[] evidence showing that the State of California did not send a properly certified notice of overdue child support obligations to the United States…". Indeed, the 11/19/21 Order itself acknowledges as much, Dkt 56, 7:1-3.

b.     Second, the 11/19/21 Order is not quite accurate that Hadsell acknowledged he hasn't conducted discovery on California's Notification and Certification. He acknowledged that he hasn't conducted discovery on **_California_**. He has conducted discovery on IRS, and it failed to produce any Notification of Certification, or indeed, any admissible evidence on this, or any other matter.

### ii.     The 11/19/21 Order Errs In Its Analysis of Credit Election Law

1.     Hadsell apologizes because it appears he miscommunicated his analysis of the law as it applies to handling Credit Elections.

2.     As a result of Hadsell's miscommunication, it appears the 11/19/21 Order errs in its analysis of the law as it applies to Credit Elections.

3.     It would be unfruitful and overly lengthy to quote from the 11/19/21 Order and then explain the differences. It will be clearer if Hadsell analyzes the issues solely with the facts and the law for this case instead of traveling down rabbit holes on hypotheticals.

4.     The biggest issue is one Hadsell tried to communicate before (e.g., Dkt 24, 6:19-20): in applying the law in this case, it is crucial that one bear in mind that there is a time sequence involved. This is especially helpful because using actual event dates make applying the law a black and white issue in most circumstances. Either an issue applies, or it doesn't, based upon the date of an event.

5.     Here, the central issue is whether or not Hadsell's $9,547 Credit Election Funds could be offset. Because, if not, then IRS could not erase it as a tax payment, and therefore,

1  undisputedly, IRS accepted every subsequent payment as a Credit Election, which the 11/19/21 Order
2  has ruled, are irrevocable, Dkt 56, 7:23-28.

3        **6.**     As discussed *supra*, the taking of Hadsell's $9,547 Credit Election Funds were not
4  "authorized" in theory because the requirements of §6402(c) are impossible for IRS to meet, but even if
5  it were authorized, IRS' authority was limited to $0 pursuant to §608(a)(3). However, that overarching,
6  threshold issue is not the issue regarding the interplay among §§6402(a), 6402(b), 6513(b)(2), and
7  6513(d).

8        **7.**    Here, it is undisputed Hadsell had an overpayment [§6402(a)] on his 2016 Tax
9  Return, at 4/17/17, and he made a Credit Election of the same amount.

10        **a.**    The issues are whether: i) IRS accepted Hadsell's Credit Election, ii) Hadsell's
11  Credit Election Funds became a tax payment on 4/16/18, or iii) IRS can delay its acceptance decision
12  for up to three years.

13        **A)**    IRS Accepted Hadsell's Credit Election

14        **i)**    It is indisputable that for any case cited in these proceedings regarding
15  Credit Elections, IRS has informed the taxpayer within 30-90 days after the taxpayer's filing, that it
16  declined the taxpayer's election, Dkt 24, 13:9-10.

17        **ii)**    It is indisputable that interest is paid on refunds if the refund is not issued
18  within 45 days of an overpayment, §§6611(a) and 6611(e)(1), Dkt 1, 22:13-24.

19        **iii)**    It is indisputable that IRS doesn't pay interest on Credit Election Funds,
20  *Id*.

21        **iv)**    Here, IRS didn't inform Hadsell within 30-90 days that it declined his
22  Credit Election. It ***indirectly*** informed him, over 448 days after his Credit Election, and 84 days after he
23  filed his ***2017*** Tax Return, that IRS was offsetting his overpayment, *Id*.

24        **v)**    IRS paid no interest on Hadsell's overpayment, *Id*.

25        **vi)**    IRS has offered no admissible evidence on any issue, and indeed, as
26  discussed *supra*, has admitted it accepted all of Hadsell's Credit Elections.

27        **vii)**    Therefore, under the preponderance of evidence standard, and IRS'
28  admissions, Hadsell's Credit Election were accepted by IRS.

**viii)**   As §§6402(a) and (b) provide, once a Credit Election is accepted, the amount of the Credit Election is no longer an overpayment (viz., no longer subject to offsets), and becomes instead, a credit against estimated tax for the succeeding tax year (funds for which there is no provision providing IRS authority to offset them).

**1)**   This transformation from an overpayment to an estimated tax payment is _**not**_ for the benefit of the taxpayer. It is for _**huge**_ benefits to the government: i) billions of dollars interest-free; ii) penalties, late fees, and interest payments, and iii) 100% of credit election funds delivered to IRS in bankruptcy proceedings; Dkt 24, 13:25-15:4.

**B)**   Hadsell's Credit Election Funds Became Tax Payments on 4/16/18

**i)**   As §6513(b)(2) provides, Credit Election Funds become tax payments for the taxpayer's subsequent tax year no later than the filing date of the next year's return.

**ii)**   The 11/19/21 Order states this plain language cannot apply to Credit Election Funds for two reasons: i) a taxpayer could avoid offsets merely be making a Credit Election, Dkt 56, 11:26-28; and ii) it would read out text from §6513(d), Dkt 56, 11:21-23.

**1)**   With all due respect, neither is true.

**iii)**   Avoid Offsets

**1)**   Only tax returns with a refund are subject to offset. The IRS can only issue a refund if a tax return is fully processed. As IRS states, "The IRS issues more than 9 out of 10 refunds in less than 21 days.", Internal Revenue Service, https://www.irs.gov/refunds/what-to-expect-for-refunds-this-year (last visited November 29, 2021).

**2)**   Thus, with actual data, IRS typically has 49 of the 52 weeks available pursuant to §6513(b)(2) in which to apply an "authorized" offset in over 90% of the refunds it processes. Therefore, making a Credit Election by no means allows a taxpayer to avoid offsets.

**3)**   Read Out §6513(d) Text

**a)**   The 11/19/21 Order states, Dkt 56, 10:20-27:

No one disputes that a taxpayer's reported overpayment is subject to an assessment, or that when a taxpayer files a return, the IRS has three years from the filing of the return to make an assessment. 26 U.S.C. § 6501(a). This is consistent with the United States's contention that language in § 6402(a) providing that "the Secretary, _within the applicable period of limitations_, may credit the amount of such overpayment," is commensurate with the three-year assessment

14

period. *See* Dkt. No. 53 at 3, 4; *see also* Dkt. No. 54 at 6 ("As provided by Hadsell, the 'applicable period of limitations' refers solely to prohibit IRS from assessing a tax liability beyond the three-year statute of limitations period when IRS can assess a tax liability[.]").

**b)**    Because the 11/19/21 Order doesn't consider the sequence of events involved, with all due respect, it misconstrues Hadsell's meaning, and the holdings of *Brady v. United States* (D.Mass. 1927) 24 F.2d 205; *Lyeth v. Hoey* (2d Cir. 1940) 112 F.2d 4, 8 ("The [IRS'] right of recoupment or credit is precluded by statute and the [taxpayer] is entitled to recover the amount of his overpayment without abatement."); *Wood v. United States* (S.D.N.Y. 1953) 121 F.Supp. 769.

**c)**    When a tax assessment is applied, it is applied at a specific point in time. ***When*** it is applied, at that time, ***IRS must look backward*** and determine if the tax assessment is time barred because IRS cannot assess a tax beyond that specific tax's statute of limitations. Viz., simply because a taxpayer has a refund due at the current time of assessment, that current circumstance ***does not*** give IRS license to apply the ***current*** refund to a ***time-barred, historical*** tax that would not otherwise be collectible.

**d)**    Here, the 11/19/21 Order is using the time bar of §6501(a) to state that IRS ***can look forward*** for up to three years from the time of a Credit Election, but then when IRS looks backward for taxes paid, IRS can change the facts on the ground to suit its desires. With all due respect, that is incorrect.

**e)**    Just as the IRS reaps the gargantuan benefits of prohibiting a taxpayer from changing the facts on the ground to his/her advantage with respect to Credit Elections when looking backward, so too, the IRS cannot do so.

**f)**    Although IRS has produced no admissible evidence, arguendo, Hadsell accepts IRS' allegation that it completed processing Hadsell's 2016 return on 7/31/17, Dkt 55, 4:5.

**g)**    At 7/31/17, IRS had all the information it needed to accept or reject Hadsell's Credit Election. From 7/31/17 to 7/9/18 it did nothing. Why? Because it accepted Hadsell's Credit Election and ***IRS had nothing to do***.

**h)**    Then, on 7/9/18, IRS decides it wants to change the facts on the ground. It wants to revoke its acceptance of Hadsell's Credit Election, and apply an offset.

**i)** As this Court has stated, 7/27/21 Transcript, 16:14-21 (changed from all caps for readability):

> It doesn't make sense to me that a taxpayer[,] who has an overpayment and has advised the United States that he wishes that overpayment to be applied as a credit on his next year's return[,] and has relied on that happening without any notice whatsoever from the government that it's not happening, can find out up to three years later that[,] in fact[,] the government has offset that credit election[,] or that overpayment[,] against the debt. That doesn't make any sense to me.

**j)** Well, Congress agrees that such a circumstance is nonsensical because it would be so highly disruptive (as it has been in this case). Therefore, it passed §6513(d) to merely create an outside time limit within which IRS must make a decision whether or not to accept a Credit Election.

**k)** More importantly, Congress wasn't being altruistic to taxpayers. If IRS could wait for up to three years to decide, the government would lose the gargantuan benefits discussed *supra* whereby the law prohibits both the taxpayer and IRS from changing the facts on the ground when IRS looks backwards in time to apply tax assessments and tax payments. This process doesn't read out the text of §6402(b). It merely restricts the timeframe, for reasons that this Court, and Congress, recognize are very essential practicalities. In fact, it is the 11/19/21 Order's analysis that reads out text. Under the 11/19/21 Order's reading, there is ***never*** a time in which "the taxpayer" is afforded an opportunity to determine, "the amount… to be an overpayment" to be used as a tax payment for the subsequent year. That's because under the 11/19/21 Order's analysis, the decision can only ever rest with IRS since there is no triggering event where the taxpayer determines matters, as §6402(b) provides.

**l)** For this case, what occurred is that IRS alleges that it failed to act to accept Hadsell's Credit Election for: i) well over a year after Hadsell's Credit Election, and ii) until just a few days short of a full year after it had processed Hadsell's return. As it is designed to do, §6513(d) cut short IRS' dalliance by implementing §6402(b) whereby Hadsell made the decision rather than IRS. Thus, when IRS looked backward, it had to accept that Hadsell's Credit Election was now a tax payment. No one disputes that tax payments are not eligible for offets. Therefore, because IRS acted too late, its actions were therefore absent any authority, and thereby violated the law.

**B. IRS Is At It Again—It Must Be Stopped**

**i.**    In a letter dated 10/18/21 (see "**Exhibit 1**", "**10/18/21 IRS Letter**", p. 19,), IRS is at it again.

**ii.**    Again, pursuant to §6402(c) (see yellow highlight, p. 20), IRS has illegally taken funds from Hadsell.

**iii.**    Because Hadsell's 2019, and 2020, tax returns were losses, with no refund or credit election involved, Hadsell believes IRS is taking his COVID stimulus payment.

**iv.**    Regardless, as discussed *supra*, because there is no circumstance now, or in the future, in which IRS can take funds from Hadsell pursuant to §6402(c), this is an illegal taking—exactly the reason why Hadsell is seeking a permanent injunction.

**v.**    To the extent the Court denies Hadsell's injunction request, or doesn't make the injunction date effective as of the date he filed his complaint, because this claim arises due to the exact same reasons and circumstances giving rise to Hadsell's claims in this action, Hadsell requests leave to amend his complaint to include this claim.

**5.    Conclusion:**

**A.**    No one can legitimately dispute that what happened here is that California's computers and the federal government's computers [just as described in the *Reich v. Collins* (1994) 513 U.S. 106 oral argument (Dkt 41, 13:5-9)] are programmed to violate the law. That is wrong. But when pointed out, the Executive Branch will not fix it. Therefore, Hadsell calls upon the Court, in compliance with the law, and based upon the Court's check and balances power, to reign in this unconstitutional government action and put a halt to this Kafkaesque madness.

**B.**    Failure to grant this motion and alter, amend, or vacate the Court's Order Denying (Dkt 56) Plaintiff's Motion for Summary Judgment (Dkt 24) would result in manifest injustice.

For these reasons, and the facts, law, and argument provided *supra*, Hadsell requests that the Court grant this motion.

Dated: November 30, 2021                 Respectfully submitted,

_____
Christopher Hadsell, Plaintiff

[Rest of this page intentionally left blank.]

# Exhibit 1

Plaintiff's Notice of Motion and Motion to Alter, Amend, or Vacate the Court's Order Denying (Dkt 56)   Case No.:
Plaintiff's Motion for Summary Judgment (Dkt 24) Under FRCP 59(e)                                        20-cv-03512-VKD

# Exhibit 1
# 10/18/21 IRS Letter

**U.S. Department of the Treasury**
**Bureau of the Fiscal Service**
P.O. Box 1686
Birmingham, AL 35201-1686



### PLEASE RETAIN FOR YOUR RECORDS

10/18/21

CHRISTOPHER J HADSELL
9000 CROW CANYON RD STE S # 399
DANVILLE, CA  94506-1175



### What Happened to My Payment?

The U.S. Department of the Treasury, Bureau of the Fiscal Service (Fiscal Service), applied all or part of your payment to delinquent debt that you owe. This action is authorized by federal law. Below is your payment information:

Payment From: Internal Revenue Service
 Payee Name: CHRISTOPHER J HADSELL                Payment Date: 10/18/21
Original Payment: $1217.38                         Payment Type: CHECK

### Who Do I Owe?

We applied your payment to debt that you owe to the following agency:

DEPARTMENT OF CHILD SUPPORT SERVICE    TOP Trace Number:
50 DOUGLAS DR STE 100                              Account #:
MARTINEZ CA 94553-8500                    Applied To This Debt: $1217.38
                                                 Type of Debt: Child Support

(866) 901-3212

Please see additional pages for other debts, if any.

### What Should I Do?

If you agree that you owe the debt, you do not need to do anything. Your debt balance has been reduced. If you believe that your payment was applied in error, you would like to resolve your debt, or you have questions about your debt or outstanding balance, contact the agency listed under **Who Do I Owe**. <u>Please have this notice available</u> when you contact the agency.

Only the agency listed under **Who Do I Owe** has information about your debt. Before sending a debt to Fiscal Service, an agency must send notice to you at the address in its records. The notice explains the amount and type of debt you owe, the rights available to you, and the agency's intention to collect the debt by applying eligible federal payments made to you.

For questions about your debt, please call the agency listed under **Who Do I Owe**. If you have questions about the Treasury Offset Program, please visit our website at <u>www.fiscal.treasury.gov/TOP</u> or call 1-800-304-3107.

FOR OFFICIAL USE ONLY: RL09/21



Plaintiff's Notice of Motion and Motion to Alter, Amend, or Vacate the Court's Order Denying (Dkt 56)    Case No.:
Plaintiff's Motion for Summary Judgment (Dkt 24) Under FRCP 59(e)                                        20-cv-03512-VKD

**FOR JOINT TAX REFUND OFFSETS ONLY:**

Tax refunds may be offset per 26 U.S.C. Section 6402( c-f ) of the Internal Revenue Code.

If you filed a joint return and only one spouse is responsible for the debt, the spouse who is not responsible for the debt, the "injured spouse," may be entitled to his or her share of the joint refund if he or she had income, withholdings, estimated tax payments, or refundable credits. If both you and your spouse were offset for separate debts, one of you may be entitled to have more of the overpayment applied to his or her debt and/or refund.

If you lived in a community property state during the tax year, the injured spouse may be entitled to his or her share of the joint refund if he or she did not have any income, withholdings, estimated tax payments, or refundable credits. The community property states are: Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Texas, Washington, and Wisconsin.

The injured spouse must complete IRS Form 8379, "Injured Spouse Claim and Allocation," to get his or her share of the refund. Call the IRS at 1-800-829-3676 to request forms. If you have questions about Form 8379 or need help completing it, please call your local IRS office or 1-800-829-1040.

**MAIL THE FORM TO THE SAME IRS OFFICE WHERE YOU MAILED YOUR ORIGINAL TAX RETURN. ALLOW THE IRS 8 WEEKS TO PROCESS THE FORM.**

Christopher Hadsell
Plaintiff
9000 Crow Canyon Rd., S-399
Danville, CA 94506
Email: CJHadsellLaw@gmail.com
Tel: (925) 482-6502

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Christopher Hadsell, | Case No.:   20-cv-03512-VKD |
|    Plaintiff, | **[PROPOSED] ORDER PLAINTIFF'S NOTICE OF MOTION AND MOTION TO ALTER, AMEND, OR VACATE THE COURT'S ORDER DENYING (DKT 56) PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT 24) UNDER FRCP 59(e)** |
| vs. | |
| United States of America, the Department of Treasury by its agency, the Internal Revenue Service | |
|    Defendants. | |

[Rest of this page intentionally left blank.]

On the motion (Dkt 60) of Plaintiff, Christopher Hadsell ("**Hadsell**") notice of which was served and filed, and heard, and on the evidence and affidavits presented to the court and on the records, files, and proceedings in the above-entitled cause, it appears to the Court that the judgment as previously entered in the action (Order Denying Plaintiff's Motion for Summary Judgment, Dkt 56) requires alteration to correctly state the judgment of the Court.

Accordingly, the judgment and the record shall be, and they are, amended in the following respects:

The Plaintiff's Motion for Summary Judgment (Dkt 41) is **GRANTED** thereby resulting in entering the Proposed Order from Plaintiff's Motion for Summary Judgment to replace in its entirety the Court's Order entered 11/19/21 (Dkt 56).

It is further ordered that the clerk make on the original record a marginal reference to this order and the replacement in its entirety of the Court's Order entered 11/19/21 (Dkt 56).

**IT IS SO ORDERED**.


Dated: _____      _____
                                   Hon. Virginia K. DeMarchi
                                   United States Magistrate Judge

Plaintiff's Notice of Motion and Motion to Alter, Amend, or Vacate the Court's Order Denying (Dkt 56) Plaintiff's Motion for Summary Judgment (Dkt 24) Under FRCP 59(e)                Case No.:
20-cv-03512-VKD